## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

IN RE:                                            CASE NO. 12-36187
ATP OIL & GAS CORPORATION,
              DEBTOR                              CHAPTER 11

---

RODNEY TOW, TRUSTEE,                              ADVERSARY NO. 14-03280
              PLAINTIFF,

V.

WATER QUALITY INSURANCE
SYNDICATE,
              DEFENDANT.

---

**WATER QUALITY INSURANCE SYNDICATE'S
MEMORANDUM IN OPPOSITION TO THE MOTION FOR PARTIAL SUMMARY
JUDGMENT FILED BY RODNEY TOW, TRUSTEE**
[relates to Dkt. No. 18]

**TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:**

Defendant, Water Quality Insurance Syndicate ("WQIS"), submits this memorandum in

opposition to the Motion for Partial Summary Judgment Regarding Duty to Defend [Dkt. No. 18]

filed by Rodney Tow, Trustee ("Trustee"). WQIS denied insurance coverage to ATP Oil and Gas

Corporation ("ATP") pursuant to the late notice exclusion warranty (among other coverage

exclusions and defenses) in the WQIS policy. As will be shown below, the WQIS policy

contains a choice of law provision which requires the application of federal general maritime

law, or in the absence thereof, New York law, when interpreting the policy. New York law does

not require that an insurer establish actual prejudice when relying on the late notice exclusion in

a marine insurance policy. Although Trustee refers to New York law in support of his motion,

the New York statute he relies upon – by its own express terms – does not apply to marine insurance policies such as this one. Additionally, the Trustee ignores the fact that the WQIS policy is an indemnity policy and does not create an affirmative duty to defend. Accordingly, Trustee's motion should be denied.

## I.      INTRODUCTION

This case involves an insured's failure to provide timely notice to its insurer, which notice is a condition precedent to coverage under the marine insurance policy at issue. Applicable New York law holds that the failure of the insured to provide sufficient notice as contractually agreed is a complete defense to coverage under that marine indemnity policy. It is axiomatic that where there exists no coverage on that indemnity policy, there can be no obligation for the insurer to indemnify or reimburse an insured for losses sustained. Even if there was coverage, there is no duty to defend under the type of marine insurance policy at issue[1] nor do the terms of that policy contractually create that duty. This Court should therefore reject Trustee's attempt to contradict well established jurisprudence as well as the request to disregard the terms of the parties' contractual agreement and create a duty to defend under a policy where none exists. Denial of Trustee's motion for partial summary judgment is appropriate.

Trustee's motion for partial summary judgment ultimately raises two issues. The first issue is whether or not ATP is owed a defense under the terms of the World Wide Vessel Pollution Policy, policy no. 44-26650 (hereinafter the "Policy"), issued by WQIS and in favor of ATP and providing coverage for certain liabilities arising from ATP's operation of the vessel -

_____

[1] While Trustee seeks partial judgment as a matter of law that WQIS owes ATP a duty to defend certain underlying litigation, the policy at issue is a marine indemnity policy. Indemnity policies ordinarily do not contain a duty to defend as those policies provide indemnity and/or reimbursement for certain amounts expended by the insured in response to an event qualifying as an "occurrence" under the terms of the policy. See, Section III(B), below. Insofar as Trustee seeks a partial judgment finding a duty to defend ATP on the part of WQIS (presumably) premised upon the terms of the WQIS policy, Trustee asks this Court to find a duty that does not exist under the contractual terms of WQIS's policy and is contrary to long standing principles of maritime law.

ATP INNOVATOR. Trustee contends that WQIS owes ATP a defense in the lawsuit entitled *United States of America v. ATP Oil and Gas Corporation*, pending as proceeding no. 2:13-CV00262 in the United States District Court for the Eastern District of Louisiana (the "Underlying Lawsuit").

In anticipation of WQIS's defense premised upon the late notice exclusion contained in the Policy, Trustee raises a second issue which contains two sub-issues: (1) whether Texas or New York law is applicable to the interpretation of the WQIS marine insurance Policy; and (b) whether WQIS must demonstrate actual prejudice to avail itself of the exclusion contained in the Policy which mandates denial of coverage for the failure of the insured to provide timely notice of an "occurrence." Trustee contends that Texas law is applicable and that WQIS must demonstrate actual prejudice caused by ATP's untimely notice in order to avail itself of the exclusion. Alternatively, Trustee argues that even if New York law is applicable, WQIS must still demonstrate actual prejudice to avail itself of the exclusion. As discussed below, both of these arguments are mistaken.

The United States Fifth Circuit Court of Appeals has held that where a choice of law provision exists in a marine insurance policy, a court interpreting that marine insurance policy must recognize and enforce the maritime choice of law provision.[2] In this case, "the federal maritime law of the United States or, in the absence of federal maritime law of the United States, the law of the State of New York" is applicable pursuant to the choice of law provision contained in the Policy.

N.Y. Ins. Law § 3420, the New York statute upon which Trustee relies in arguing that WQIS must show actual prejudice to avail itself of the timely notice exclusion contained in the Policy, is not applicable to a policy of marine insurance because such policies are expressly

---

[2] See, *Great Lake Reinsurance (UK) PLC v. Durham Auctions, Inc*., 2010 A.M.C. 185, 585 F.3d 236 (5th Cir. 2009).

excluded under that statute's very terms.[3] Under applicable New York law, ATP's failure to notify WQIS of a potential "occurrence" under the Policy for eighteen (18) months from the date of the purported occurrence, or even seven (7) months from the date of the Underlying Lawsuit, as admitted by Trustee in his motion, is untimely as a matter of law. As a result, there is no requirement that WQIS demonstrate actual prejudice and the late notice vitiates coverage (including reimbursement of defense costs) under the Policy.

## II.     FACTUAL BACKGROUND

WQIS issued a World Wide Vessel Pollution Policy, policy no. 44-26650, in favor of ATP which provides coverage for certain liabilities arising from ATP's operation of the vessel ATP INNOVATOR with an inception date of November 11, 2011 and an expiration date of November 11, 2012.[4]

The Policy for the applicable law under which it is to be interpreted as follows:

*SECTION B*

*Applicable Law and Venue*

(1) This **Policy** is deemed to have been issued to the **Assured** in New York, New York, and the law applicable to the interpretation of this **Policy** of insurance and the rights and obligations of WQIS and the **Assured** hereunder shall be federal maritime law of the **United States** or, in the absence of federal maritime law of the **United States**, the law of the State of New York, without regard for New York's choice of law rules.[5]

The express terms of the Policy states that WQIS agrees to "indemnify… and reimburse [ATP] for an **Occurrence,**" which includes "[d]ischarges, [r]eleases or the [s]ubstantial [t]hreat of [d]ischarges or [r]eleases," subject to the Policy's terms, conditions and exclusions.[6] Nowhere

---

[3] See, N.Y. Ins. Law § 3420(i)(McKinney 2013).
[4] See, World Wide Vessel Pollution Policy, policy no. 44-26650, which is attached to Trustee's motion for partial summary judgment as Exhibit 1, Dkt. No. 18-1, p. 1 of 19.
[5] *Id.* at Section B, Dkt. No. 18-1, p. 8 of 19.
[6] *Id.* at Part I, Insuring Provisions p. 3 of 19 (emphasis theirs).

in the Policy is a duty to defend imposed on WQIS. Instead, the Policy repeatedly and uniformly

provides that it is one of indemnity and/or reimbursement as is evidenced by reference to another

section:

*SECTION H*

*U.S. Criminal Defense*

Reasonable costs and expenses incurred by the **Assured** with the prior written consent of WQIS for the investigation of, or defense against, criminal investigation and/or charges against the **Assured** and/or **Assured's** employees under **United States and State** law arising from the actual discharge of **Oil** or **Release** of **Hazardous Substances** into or upon the **Navigable Waters** or adjoining shoreline from a **Vessel** on the Vessel Schedule. Notwithstanding the prior consent requirement, WQIS will reimburse the **Assured** for up to a maximum of $5,000 per **Occurrence** where the **Assured** is unable to obtain the prior consent of WQIS, subject always, to immediate notice to WQIS…[7]

The Policy also excludes certain events otherwise qualifying as "occurrences" under the

Policy based upon the Assured's operation of vessel and which is pertinent to the instant motion

for partial summary judgment by Trustee:

PART III – **POLICY** EXCLUSIONS<br>SECTION A<br>*General Exclusions*

Notwithstanding any language in this **Policy** to the contrary, this **Policy** does not cover any loss caused directly, indirectly, or resulting from any of the following exclusions. Any such loss is excluded regardless of any other cause or event contributing concurrently or in sequence to the loss. There is no coverage for:

…

(6)    The willful misconduct, including but not limited to gross negligence, of the **Assured**, or the willful misconduct of **the Owner or Operator** of the **Vessel**(s) if within the privity or knowledge of the **Assured;**[8]

---

[7] See, Section H of the Policy, Dkt. No. 18-1 at p. 6 of 19 (emphasis theirs).
[8] See, Part III - Exclusions of the Policy at p. 6 of 19 (emphasis theirs).

5

The Policy also contains a late-notice exclusion that is expressly stated as a warranty imposed on the assured. Specifically, Part IV, Section C of the Policy provides in pertinent part:

(1) IN THE EVENT OF ANY **OCCURRENCE** OR INCIDENT WHICH MAY GIVE RISE TO A CLAIM UNDER THIS **POLICY**, IT IS **WARRANTED** THAT THE **ASSURED** SHALL GIVE IMMEDIATE NOTICE TO WQIS OF SAID **OCCURRENCE** OR INCIDENT BY TELEPHONE. NOTICE BY E-MAIL AND/OR FACSIMILE AND/OR OTHER ELECTRONIC MEANS SHALL NOT CONSTITUTE IMMEDIATE NOTICE.

(2) It is **warranted** that the **Assured** shall cooperate with WQIS and the **Assured** shall immediately forward to WQIS all information, communications, surveys, reports, processes, pleadings, or legal papers relating to any **Occurrence** and shall make available and secure all vessels, premises and facilities for inspection by WQIS. …
…
<u>FAILURE TO COMPLY WITH ANY OF THESE PROVISIONS MAY RESULT IN COVERAGE BEING NULL AND VOID.</u>[9]

On March 14, 2012, the Bureau of Safety and Environmental Enforcement, Department of the Interior, United States of America, issued a Notification of Incidence and Non-Compliance (hereinafter the "BSEE Notice") for "knowingly and willingly inject[ing] the [c]hemical Cleartron ZB-103 (water clarifier) into the produced water discharge..."[10] The chemical discharge occurred from the ATP INNOVATOR into the waters of the Gulf of Mexico and was "concealed in a manner to prevent BSEE inspectors from finding it."[11] It is undisputed that ATP received the BSEE Notice. It is further undisputed that ATP did <u>not</u> notify WQIS of its receipt of the BSEE Notice or the allegations contained therein until September 12, 2013.

On February 11, 2013, the United States of America filed the lawsuit styled *United States of America v. ATP Oil and Gas Corporation*, proceeding no. 2:13-CV00262, in the United States

---

[9] <u>See</u>, Part IV, Section C of the Policy, Dkt. No. 18-1 at p. 9 of 19.
[10] <u>See</u>, March 14, 2012 Bureau of Safety and Environmental Enforcement Notification of Incidence and Non-Compliance to ATP attached to Trustee's motion, Dkt. No. 18-3, p. 3 of 76.
[11] *Id.*

District Court for the Eastern District of Louisiana.[12] In its Complaint, the United States alleged that ATP circumvented a National Pollution Discharge Elimination System ("NPDES") permit by installing a metal tube into an outfall pipe which was used to inject unauthorized chemicals into the Gulf of Mexico to break apart oil molecules into smaller, dispersed deposits.[13] The United States alleged that, on information and belief, the chemicals were injected through the metal tube contained within the outfall pipe for the purpose of "mask[ing] oil sheen on the ocean surface resulting from ATP's discharge of wastewater containing quantities of oil in excess of its NPDES permit limit"[14] from April 2007 through March 14, 2012.[15] The United States further alleged that the "illegal injection line was concealed in the rafters in a manner that prevented inspectors from discovering it"[16] and sought increased penalties under the Clean Water Act for any proven "gross negligence or willful misconduct" by ATP resulting from the unpermitted dispersal of chemicals to break down oil pollution into the Gulf of Mexico by the ATP INNOVATOR,[17] among other violations of federal law.[18]

It is undisputed that ATP was served with the Complaint. It is also undisputed that ATP did not provide notice to WQIS of the BSEE Notice or the Underlying Litigation until at least September 13, 2013.[19] Upon notice and review, WQIS denied ATP's claim under the Policy based upon late notice on account of the passage of eighteen months from March 14, 2012, or the date upon which federal officials found ATP to be in non-compliance with certain federal

---

[12] See, Exhibit A, Complaint of United States of America in proceeding no. 2:13-cv-00262. WQIS is re-filing the Complaint with this opposition as a complete copy of the Complaint has not yet been filed in this proceeding.
[13] Id. at paragraphs 16-25.
[14] Id. at paragraph 20.
[15] Id. at paragraph 14.
[16] Id. at paragraph 77.
[17] Id. at paragraph 50-68.
[18] Id., in globo.
[19] See, Trustee's memorandum in support of motion for partial summary judgment at paragraph 46, Dkt. No. 18.

statutes, among other reasons.[20] Specifically, WQIS was denied the opportunity to investigate the facts and circumstances leading to the purported discharge, thereby preventing WQIS from responding to the claims asserted by the United States in the event that coverage might have in fact existed under the Policy.[21]

Approximately twenty-two (22) months after the BSEE Notice was issued[22] and over seventeen (17) months after the Underlying Lawsuit was filed,[23] WQIS finally received a request by ATP for consent to retain the law firm of Cooper & Scully as defense counsel to represent ATP's interests in the Underlying Litigation on July 12, 2014.[24] WQIS, through its counsel, refused consent on the basis that the Policy did not provide coverage for the claims asserted.[25] Additionally, it was noted that consent to any such request was impossible because of threatened litigation (including extra-contractual claims) against WQIS by Cooper & Scully on behalf of ATP.[26]

On August 17, 2012, ATP filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, Case No. 12-36187. A stay order issued in the Underlying Lawsuit resulting from the bankruptcy filing.[27] ATP's bankruptcy case was converted to a case under chapter 7 of the Bankruptcy Code on June 26, 2014.[28] This adversary proceeding ensued.

---

[20] See, Exhibit B, October 21, 2013 Denial of ATP's claim for coverage under the Policy and the attachment thereto.
[21] Id. at pp. 7-8.
[22] Or from March 14, 2012 until July 12, 2014.
[23] Or from February 11, 2013 until July 12, 2014.
[24] See, Exhibit C, July 12, 2014 correspondence from T. Micah Dortch to A. Gordon Grant, Jr.
[25] See, Exhibit D, August 20, 2014 email correspondence from Philip S. Brooks, Jr. to T. Micah Dortch.
[26] Id.
[27] See, Exhibit E, Order granting Motion to Stay Proceedings filed by United States in the Underlying Lawsuit. In fact, Trustee places the cart before the horse in seeking partial summary judgment finding an obligation under the terms of the Policy as all of the legal and factual findings necessary for a finding of coverage under the Policy have not yet been rendered. For example, allegations of willful misconduct and/or gross negligence are presently before the district court in the Underlying Litigation with a finding that ATP acted in either manner which excludes coverage under the terms of the Policy. See, Section III(B)(4). Insofar as it is necessary to decide the coverage issue before an obligation arises on the part of WQIS to indemnify and/or reimburse (as opposed to the finding of a duty

### III.     LAW AND ARGUMENT

#### A.  SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).  In resolving the motion, the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).  The court may not make credibility findings, weigh the evidence, or resolve the factual disputes.  *Id.*; *International Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059, 112 S.Ct. 936 (1992).  The substantive law dictates which facts are material. *Littlefield v. Forney Independent School Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).

#### B. THE MARINE INDEMNITY POLICY AT ISSUE CONTAINS NO DUTY TO DEFEND IN FAVOR OF ATP.

The Policy expressly states in Part I that WQIS agrees to "indemnify… and reimburse [ATP] for an **Occurrence,**" which includes "[d]ischarges, [r]eleases or the [s]ubstantial [t]hreat of [d]ischarges or [r]eleases," subject to the terms, conditions and exclusions contained within

---

to defend as sought) certain of the reasonable expenses accrued in defense of the Underlying Lawsuit, the instant motion for partial summary judgment asks for relief that cannot be granted at present.
[28] Dkt. No. 3163 in Case No. 12-36187.

the Policy.[29] As is customary, the Policy does <u>not</u> impose on WQIS the duty to defend. Instead, the Policy is one of indemnity as is clear by a plain reading of its terms:

*SECTION H*

*U.S. Criminal Defense*

> Reasonable costs and expenses incurred by the **Assured** with the prior written consent of WQIS for the investigation of, or defense against, criminal investigation and/or charges against the **Assured** and/or **Assured's** employees under **United States and State** law arising from the actual discharge of **Oil** or **Release** of **Hazardous Substances** into or upon the **Navigable Waters** or adjoining shoreline from a **Vessel** on the Vessel Schedule. Notwithstanding the prior consent requirement, WQIS will reimburse the **Assured** for up to a maximum of $5,000 per **Occurrence** where the **Assured** is unable to obtain the prior consent of WQIS, subject always, to immediate notice to WQIS…[30]

The Policy explicitly states that it provides an indemnity and/or reimbursement obligation for "reasonable costs and expenses incurred" by ATP for an "occurrence" covered by the Policy. The applicable Policy provisions, as well as the case law setting forth the coverage provided by the Policy, make it clear that a duty to defend does not exist in this case.

"[I]n the absence of a specific and controlling rule," the interpretation of marine insurance policies is "to be determined by reference to appropriate state law."[31] Marine indemnity policies do not ordinarily create a duty to defend.[32] With only a duty to pay covered claims and no duty to defend, reimbursement of defense costs must be based on indemnification, which is limited to the agreed policy limit.[33] Similarly under New York law interpreting marine indemnity policies (which is otherwise applicable in the absence of federal general maritime law, <u>see</u>, section III(C)(1), below), the insurer's obligation to pay does not arise until after the insured

---

[29] <u>See</u>, the Policy at Part I, Insuring Provisions, Dkt No. 18-1 at p. 3 of 19.
[30] *Id*. at Section H, Dkt. No. 18-1 at p. 6 of 19 (emphasis theirs).
[31] <u>See</u>, *Gabarick v. Laurin Maritime (America), Inc.*, 650 F.3d 545, 553, 2011 A.M.C. 1912 (5th Cir. 2011), c
[32] *Id*.
[33] *Id*.

suffers an actual monetary loss.[34] As such, there can be no affirmative duty to defend in a marine indemnity policy under New York law because the insured will have suffered no actual monetary loss until the insured makes a payment of his costs of defense.

Trustee's motion for partial summary judgment seeking judgment as a matter of law holding that WQIS has a duty to defend ATP should be denied.

### C. NO COVERAGE UNDER THE POLICY EXISTS BECAUSE ATP FAILED TO PROVIDE TIMELY NOTICE AS REQUIRED.

#### 1. THE TEXAS INSURANCE LAW RELIED UPON BY TRUSTEE IS <u>NOT</u> APPLICABLE TO THIS LITIGATION.

The validity of choice of law clauses in maritime contracts, including marine insurance policies, is governed by maritime law principles.[35] The United States Fifth Circuit Court of Appeals ("Fifth Circuit"), in *Durham Auctions*, has held that under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable.[36]

Maritime choice of law principles govern the determination of the appropriate law governing the terms, conditions and exclusions contained in a marine insurance policy. Where a marine insurance policy provides for the application of specific law, a court should apply the parties' contractually agreed upon provisions and interpret the policy in accordance with the parties' expectations as to the law which would otherwise be applicable at the time the contract was executed, absent a showing that the agreed upon term is unreasonable or unjust. Federal maritime law or, in the absence thereof, New York law is the proper choice of law to interpret

---

[34] See, *Linman v. American Steamship Owners Mutual Protection and Indemnity Ass'n*, 299 F.Supp. 106 (S.D.N.Y.), aff'd 417 F.2d 627 (2nd Cir. 1969), cert. denied, 397 U.S. 936 (1970); *Cucurillo v. American Steamship Owners Mutual Protection and Indemnity Ass'n*, 1969 A.M.C. 2334 (Sup.Ct. 1969); *Ahmed v. American Steamship Owners Mutual Protection and Indemnity Ass'n*, 640 F.2d 993, 1981 A.M.C. 897 (9th Cir. 1981)(applying New York law in interpreting marine indemnity policy).

[35] *Sembawang Shipyard, Ltd. v. Charger, Inc.*, 95 F.2d 983, 986 (5th Cir. 1992).

[36] See, *Durham Auctions*, 585 F.3d at 242; see also, *Sembawang*, 755 F.2d at 986.

the Policy at issue as well as the obligations owed by and between ATP and WQIS. Texas insurance law is not applicable to the claims at issue in this case.

In *Durham Auctions*, an insurer, a United Kingdom non-admitted surplus line insurer, brought an action in a Mississippi district court against Durham, a Mississippi corporation, to declare void a policy of marine insurance issued to Durham.[37] The policy at issue therein provided hull and P&I coverage in respect to a vessel used by Durham's owners for sports fishing and general pleasure boating in the Gulf Coast area.[38] The policy contained a "CHOICE OF LAW" provision which read:

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles of and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New York.[39]

Relying on the choice of law provision contained in the policy, the insurer filed its motion for summary judgment seeking a finding by the district court that the marine insurance policy was void at its inception pursuant to the maritime law doctrine of *uberrimae fidei* because the insured made several material misrepresentations in the insurance application submitted to the insurer.[40] Recognizing the U.S. Supreme Court holding in *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*[41] that federal courts should not fashion and apply novel admiralty rules to govern provisions contained in maritime insurance policies in the absence of federal legislation or conflicting federal judicial precedent as well as the Fifth Circuit's determination that "the *uberrimae fidei* doctrine is not 'entrenched federal precedent,'"[42] the insurer argued that New

---

[37] *Durham Auctions*, 585 F3d at 237.
[38] *Id.*
[39] *Id.* at 238-39.
[40] *Id.* at 238.
[41] 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).
[42] *Durham Auctions*, 585 F.3d at 239, citing *Albany Insurance Co. v. Kieu*, 927 F.2d 882, 889 (5th Cir. 1991). While Trustee cited *Kieu* for the proposition that a choice of law analysis was required to determine the appropriate state

York law was instead applicable. Because New York law echoed the doctrine of *uberrimae fidei*, the insurer urged dismissal of the action.[43] The Mississippi district court denied the insurer's motion, ruling that Mississippi law (as opposed to New York law and the doctrine of *uberrimae fidei*) applied.[44]

Thereafter, the insurer and Durham reached a bracketed settlement agreement with the settlement amount contingent upon resolution of the choice of law issue.[45] With only the choice of law at issue,[46] the insurer and Durham jointly moved for certification of an interlocutory appeal under section 1292(b).[47] As such, the Fifth Circuit limited its review to the issue of whether the applicable substantive law was that of Mississippi, on the one hand, or the general maritime law, or the law of New York pursuant to the choice of law provision contained in the marine policy, on the other.[48]

Quoting Schoenbaum's treatise, the Fifth Circuit noted that: "A choice of law provision in a marine insurance contract will be upheld in the absence of evidence that its enforcement would be unreasonable or unjust."[49] The Court went on to quote a portion of the U. S. Ninth Circuit's decision in *Chan v. Society Expeditions, Inc.*[50] wherein that court held that courts sitting in admiralty will give effect to a choice of law provision contained in the parties' contract:

> In the absence of a contractual choice-of-law clause, federal courts sitting in admiralty apply federal maritime choice-of-law principles derived from the

---

law to apply in the absence of the controlling federal maritime law, it is noted that *Kieu* did not address a maritime insurance contract containing a choice of law provision. As such, *Kieu* is inapposite to the choice of law issue before this Court.

[43] *Durham Auctions*, 585 F.3d at 239.
[44] *Id.*
[45] *Id.* at 240-41.
[46] The Fifth Circuit noted that because there was no grant of summary judgment, partial or otherwise, as to whether *uberrimae fidei* or New York or Mississippi law applied, nor had there been any pretrial conference or the entry of a pretrial order under Rule 16 relating thereto, the choice of law issue remained open for trial on the merits. *Durham*, 585 F.3d at 240.
[47] *Id.* at 240.
[48] *Id.* at 241.
[49] *Id.*, citing Schoenbaum, ADMIRALTY AND MARITIME LAW 276 (4th Ed. 2004).
[50] 123 F.3d 1287 (9th Cir. 1997).

> Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and its progeny. *See Sundance Cruises Corp. v. The American Bureau of Shipping*, 7 F.3d 1077, 1081 (2d Cir. 1993); *see also* SCHOENBAUM § 6 – 13, at 280-82. But where the parties specify in their contractual agreement which law will apply, admiralty courts will generally give effect to that choice. *See Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763, 767 (D.C.Cir. 1992).[51]

The Fifth Circuit noted that it has likewise recognized and enforced maritime contract choice of law provisions previously and answered the certified question that either the general maritime law doctrine of *uberrimae fidei* or New York law, rather than Mississippi law, governed the parties' rights under the marine insurance policy.[52]

Similarly, the Policy at issue in this adversary proceeding provides for application of "the federal maritime law of the United States or, in the absence of federal maritime law of the United States, the law of the State of New York…"[53] As a result, this Court should honor the contractual choice of law provision contained in the marine insurance contract and apply federal maritime law or, in the absence thereof, New York law.

The cases cited by Trustee are inapposite as each seeks to apply a Texas conflict of law rule, Tex. Ins. Code Ann. § 21.42.[54] To the extent that section 21.42 addresses insurance conflict of law issues under Texas state law, "it is not controlling because in this maritime case, it is *maritime*, not state conflict of law rules that govern."[55]

---

[51] *Durham Auctions,* 585 F.3d at 243.

[52] *Id.* at 243-45. See also, *AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255, 262 (3rd Cir. 2008)(United States Third Circuit Court of Appeals decision enforcing choice of law provision in maritime contract and holding New York law to be applicable).

[53] See, the Policy at Section B, Dkt. No. 18-1 at p. 8 of 19.

[54] *American Nat'l Ins. Co. v. Citizens Ins. Co. v. Conestoga Settlement Trust*, 2014 WL 3734215 (Tex.App. San Antonio, July 30, 2014), concerns a life insurance policy but failed to even apply section 21.42 as the beneficiary under the policy was not an inhabitant or resident of the State of Texas. *Citizens Ins. Co. of Amer. V. Daccach*, 217 S.W.3d 430 (Tex. 2007), did not analyze section 21.42.

[55] *Durham Auctions*, 585 F.3d at 245 (emphasis theirs); see also, *St. Paul Fire and Marine Ins. Co.. et al. v. Bd. of Commissioners of the Port of New Orleans*, 646 F.Supp.2d 813 (E.D.La. 2009), and citations therein.

While Trustee asserts that the Policy's choice of law provision bears no substantial relationship to the parties or the transaction as required by Texas law,[56] Trustee's analysis is flawed because maritime choice of law rules govern the analysis.[57] In *Durham Auctions*, the Fifth Circuit held that the application of New York law was not unreasonable or unjust because the insurer was a foreign insurer authorized in New York with as agent for service of process in New York, New York, and maintained its United States Trust Fund in New York (presumably from which any coverage found under the policy at issue therein would be paid).[58] Similarly, WQIS's United States headquarters and underwriters are in New York, New York,[59] it maintains its agent for service in New York (as admitted by Trustee),[60] and it maintains its accounts from which any coverage due under policies issued by it are paid in New York.[61] Under controlling Fifth Circuit precedent,[62] this Court should uphold the contractually agreed upon choice of law provision expressed in the Policy and apply federal maritime law or, in its absence, the law of the State of New York.

**2. THERE IS <u>NO</u> COVERAGE UNDER THE POLICY BECAUSE ATP FAILED TO PROVIDE TIMELY NOTICE OF THE PURPORTED OCCURRENCE.**

The Policy at issue contained a late-notice exclusion. Specifically, Part IV, Section C of the Policy provides in pertinent part:

> (3) IN THE EVENT OF ANY **OCCURRENCE** OR INCIDENT WHICH MAY GIVE RISE TO A CLAIM UNDER THIS **POLICY**, IT IS **WARRANTED** THAT THE **ASSURED** SHALL GIVE IMMEDIATE NOTICE TO WQIS OF SAID **OCCURRENCE** OR INCIDENT BY

---

[56] <u>See</u>, Dkt. No. 18, p. 17 of 27 at paragraph 20-21.
[57] <u>See</u>, *Durham Auctions,* 585 F.3d at 244.
[58] *Id.*
[59] <u>See</u>, Tow's Memorandum in Support of Motion for Summary Judgment, Dkt. No. 18 at p. 24 of 27, paragraph 44.
[60] <u>See</u>, the Policy, Dkt. No. 18-1, p. 18 of 19.
[61] *Id.*
[62] <u>See</u>, *Great Lake Reinsurance (UK) PLC v. Durham Auctions, Inc*., 2010 A.M.C. 185, 585 F.3d 236 (5th Cir. 2009).

15

TELEPHONE. NOTICE BY E-MAIL AND/OR FACSIMILE AND/OR OTHER ELECTRONIC MEANS SHALL NOT CONSTITUTE IMMEDIATE NOTICE.

(4) It is **warranted** that the **Assured** shall cooperate with WQIS and the **Assured** shall immediately forward to WQIS all information, communications, surveys, reports, processes, pleadings, or legal papers relating to any **Occurrence** and shall make available and secure all vessels, premises and facilities for inspection by WQIS. …

…

FAILURE TO COMPLY WITH ANY OF THESE PROVISIONS MAY RESULT IN COVERAGE BEING NULL AND VOID.[63]

Research did not reveal any entrenched federal maritime law on the interpretation and effect of a late notice provision in a marine insurance policy. However, it is well established that an insured has an obligation to comply with the notice-of-occurrence and notice-of-claims provisions of an insurance policy.[64] Where the insured fails to comply with these conditions, the insurer is relieved of its duty not only to indemnify under the policy, but it is also relieved of the duty to reimburse costs and expenses paid by the insured that are attributable to the defense of the underlying claim.[65] Thus, the insured's failure to provide notice within a reasonable time without a valid excuse for delay constitutes a complete defense to a claim by the insured to compel the insurer to bear the costs of defense in the underlying action.[66]

---

[63] *Id.* at Part IV, Section C, Dkt. No. 18-1, p. 9 of 19. Trustee cites *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex 1990), and *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 391 F.Supp.2d 541 (S.D. Tex. 2005), in support of his assertion that "Texas courts will not enforce a choice of law provision  if the chosen state has no substantial relationship to the parties or transaction." As seen, a choice of law provision in a marine insurance contract is analyzed utilizing maritime choice of law principles, as opposed to Texas choice of law principles. As such, it is immaterial how Texas choice of law principles are applied under a Texas choice of law analysis and *DeSantis* and *In re Enron Corp.* are inapposite.

[64] See, *State of N.Y. v. Blank*, 27 F.3d 783, 793 (2nd Cir. 1994), *abrogated on other grounds by Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co.*, 703 F.3d 118 (2nd Cir. 2012); see also, *Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2nd Cir. 1987)("Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy"); *Security Mut. Ins. Co. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 440, 340 N.Y.2d 902, 905, 293 N.E.2d 76, 78 (1972).

[65] See, *Blank*, 27 F.3d at 793; see also, *Olin Corp. v. Insurance Co. of North America*, 743 F.Supp. 1044, 1055 (S.D.N.Y. 1990), *aff'd*, 929 F.2d 62 (2nd Cir. 1991)(per curiam); *Sorbara Construction Corp. v. AIU Ins. Co.*, 11 N.Y.3d 805, 806 (N.Y. 2008); *National Union Fire Ins. Co. of Pittsburgh, PA v. Great American E&S Ins. Co.*, 86 A.D.3d 425, 426 (N.Y. App. Div. 2011).

[66] See, *Blank*, 27 F.3d at 793; see also, *Christiana Gen. Ins. Corp. v. Great American Ins. Corp.*, 979 F.2d 268, 275

The United States Second Circuit Court of Appeals has recognized several important policy reasons advanced by New York's strict enforcement of the notification requirements contained in insurance policies:

> They enable insurers to make a timely investigation of relevant events and exercise early control over a claim. Early control may lead to a settlement before litigation and enable insurers to take steps to eliminate the risk of similar occurrences in the future. When insurers have timely notice of relevant occurrences, they can establish more accurate renewal premiums and maintain adequate reserves.[67]

Under New York law, a provision requiring notice when it appears likely that a claim will or "may" involve a policy does not require a probability – much less a certainty – that the policy at issue will be involved.[68] All that is required is a "reasonable possibility" of such happening, based on an objective assessment of the information available.[69] Such a possibility may exist even though there are some factors that might tend to suggest the opposite.[70] A "theoretical possibility" that a policy may not be involved is not an objectively reasonable basis upon which to conclude that a claim does not appear likely to involve the policy.[71]

In the case at bar, a notice of non-compliance was issued by the Bureau of Safety and Environmental Enforcement, Department of the Interior, United States of America, to ATP on March 14, 2012.[72] On February 11, 2013, the United States of America filed the Underlying Lawsuit against ATP.[73] Thereafter and approximately eighteen months after the alleged occurrence and almost seven months after the United States filed suit against ATP, Trustee

---

(2nd Cir. 1992; *Utica Mut. Ins. v. Fireman's Fund Ins. Cos.*, 748 F.2d 118, 121 (2nd Cir. 1984).
[67] *Blank*, 27 F.3d at 794, citing *Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2nd Cir. 1987); see also, *Indian Harbor Ins. Co. v. City of San Diego*, 586 Fed.Appx. 726, 730 (2nd Cir. 2014)("The purpose of these notification requirements, however, is to permit the insurance company to investigate promptly").
[68] *Christiana*, 979 F.2d at 276.
[69] *Id.*, citing *Ogden Corp*, 924 F.2d at 43; *International Flavors*, 822 F.2d at 272.
[70] *Christiana*, 979 F.2d at 276 (citations omitted).
[71] *Id.*
[72] See, Dkt. No. 18-3 at p. 3, BSEE Notification to ATP.
[73] See, Dkt. No. 18, p. 10 of 27 at Trustee's Undisputed Fact No. 7.

17

represents that ATP finally "tendered the Underlying Lawsuit to WQIS and requested that WQIS defend and indemnify it…"[74]

ATP failed to provide any notice of the purported occurrence for which it now seeks coverage for approximately eighteen months from the date of that alleged occurrence, or from the date it had notice of a potential occurrence (the date of the BSEE Notification on March 14, 2012) until the date it provided non-conforming email notice (September 13, 2013). Delays in notification of one or two months by the insured to the insurer are routinely held to be unreasonable under New York law.[75] The lapse of those eighteen months, as a matter of law, must result in a finding of law that there exists no coverage under the Policy.[76]

New York law is clear: when notice is required pursuant to the terms of a policy of marine insurance, the lapse of even seven months is far too late, and ATP's silence for eighteen months may even be classified as egregious. ATP failed to comply with the notice conditions of the Policy and WQIS was (and is) relieved of any obligation not only to indemnify, but also to reimburse defense costs paid by, ATP.[77] ATP's failure to provide notice within a reasonable time

---

[74] *Id.* at p. 13 of 27 at Trustee's Undisputed Fact No. 9.

[75] See, *Indiana Harbor Ins. Co.*, 586 Fed.Appx. at 729 (58-day delay on the insured's claim unreasonable as a matter of law); *American Home Assur. Co. v. Republic Ins. Co.*, 984 F.2d 76, 78 (2nd Cir. 1993)(36 day delay untimely as a matter of law); *Rivera v. Core Cont'l Const. 3, LLC*, 106 A.D.3d 636 (N.Y. App. Div. 2013)(6 month delay in providing notice to insurer untimely as a matter of law); *Brown Stone Partner/A&F, LLC v. Aleem Constr., Inc.*, 18 A.D.3d 204, 205 (N.Y. App. Div. 2005)(5 month delay untimely); *Paramount Ins. Co. v. Rosedale Gardens*, 293 A.D.2d 235 (N.Y. App. Div. 2002)(7.5 month delay untimely).

[76] Certainly, the lapse of those eighteen months creates an issue of material fact as to whether WQIS suffered actual prejudice, notwithstanding the absence of a requirement to show actual prejudice. WQIS was deprived of any opportunity to make a timely investigation of relevant events and exercise early control over the subsequent claim. The passage of those eighteen months also prevented WQIS from having any control over any settlement opportunities before the Underlying Litigation ensued or taking steps to eliminate the risk of similar occurrences in the future.

[77] See, *Blank*, 27 F.3d at 793; see also, *Olin Corp. v. Insurance Co. of North America*, 743 F.Supp. 1044, 1055 (S.D.N.Y. 1990), *aff'd*, 929 F.2d 62 (2nd Cir. 1991)(per curiam); *Sorbara Construction Corp. v. AIU Ins. Co.*, 11 N.Y.3d 805, 806 (N.Y. 2008); *National Union Fire Ins. Co. of Pittsburgh, PA v. Great American E&S Ins. Co.*, 86 A.D.3d 425, 426 (N.Y. App. Div. 2011).

constitutes a complete defense to the requested relief and requires denial of Trustee's motion for

partial summary judgment.[78]

### 3. NEW YORK LAW DOES NOT REQUIRE A SHOWING OF ACTUAL PREJUDICE BY THE INSURER ASSERTING UNTIMELY NOTICE IN A MARINE INSURANCE POLICY.

Trustee argues that WQIS must demonstrate that it has suffered actual prejudice as a

result of its receipt of the excessively late notice in order to assert the untimely notice defense as

mandated by N.Y. Ins. Law § 3420(a)(5). In his memorandum in support of his motion, Trustee

asserts that the following New York statutory provision expressly derogates from the common

law rule which holds that an insurer is not required to demonstrate actual prejudice:

> (a) No policy or contract insuring against liability for injury to person, except as provided in subsection (g) of this section, or against liability for injury to, or destruction of, property shall be issued or delivered in this state, unless it contains in substance the following provisions or provisions that are equally or more favorable to the insured and to judgment creditors so far as such provisions relate to judgment creditors:
>> …
>> (5) A provision that failure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide timely notice has prejudiced the insurer…[79]

While Article 3420(A)(5) does create a burden on the part of the insurer to demonstrate

actual prejudice to successfully satisfy late notice as a defense to coverage under some types of

insurance, Trustee fails to direct the Court's attention to certain provisions which exclude *marine*

*insurance policies* from the statutory rule. Subsection (i) of Article 3420 states:

> (i) Except as provided in subsection (j) of this section, <u>the provisions of this section shall not apply</u> to any policy or contract of insurance in so far as it covers the liability of an employer for workers' compensation, if such contract is governed by the provisions of section fifty-four of the workers' compensation law, or by

---

[78] <u>See</u>, *Blank*, 27 F.3d at 793; <u>see also</u>, *Christiana Gen. Ins. Corp. v. Great American Ins. Corp.*, 979 F.2d 268, 275 (2nd Cir. 1992; *Utica Mut. Ins. v. Fireman's Fund Ins. Cos.*, 748 F.2d 118, 121 (2nd Cir. 1984).
[79] N.Y. Ins. Law § 3420(a)(5).

any similar law of another state, province or country, ***nor to the kinds of insurances set forth in paragraph three of subsection (b) of section two thousand one hundred seventeen of this chapter.***[80]

The provision referenced in subsection (i), Subsection (b)(3)(A)-(B) of Section 2117, carves out additional insurance policies from the ambit of Section 3420 based upon the type of coverage provided by those policies:

> (b)(3) marine insurance of the following kind or kinds, where it is reasonable so to do  with due regard to the interests of all concerned and whether or not, at the time of such negotiation, the subject matter of such insurance is within or without this state:
>
>> (A) insurance against perils of navigation, transit or transportation upon hulls, freights or disbursements, or other shipowner interests, goods, wares, merchandise and all other personal property and interests therein, in course of exportation from or importation into any country, or transportation coastwise, including transportation by land or water from point of origin to final destination and including war risks and marine builders' risks; and
>>
>> (B) ***insurance in connection with ocean going vessels against any of the risks specified in paragraph twenty-one of subsection (a) of section on thousand one hundred thirteen of this chapter.***[81]

That provision in turn leads the Court to the following definition found at N.Y. Ins. Law § 1113(a)(21) which excludes marine insurance policies, such as the one at issue herein, from Section 3420:

> (a)(21) **"Marine protection and indemnity insurance," means insurance against, or against legal liability of the insured for, loss, damage or expense arising out of, or incident to, the ownership, operation, chartering, maintenance, use, repair or construction of any vessel, craft or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness or death or loss of or damage to the property of another person.**[82]

---

[80] N.Y. Ins. Law § 3420(i)(emphasis supplied).
[81] N.Y. Ins. Law § 2117(b)(3)(A)-(B)(emphasis supplied).
[82] N.Y. Ins. Law § 1113(a)(21)(emphasis supplied).

Or concisely stated, "[i]t appears that maritime insurance contracts are, and have been for decades, excluded from [section 3420] of New York insurance law."[83] As such, notice exceptions must be analyzed under New York's "no-prejudice" standard.[84] The no-prejudice standard is a long standing rule applied by New York courts which provides that where a primary insurance contract requires an insured to provide prompt notice after an occurrence potentially giving rise to liability, "the absence of timely notice of an occurrence is the failure of a condition precedent which, as a matter of law, vitiates the contract.[85] Trustee's argument that Section 3420 applies to the Policy at issue is simply incorrect and is a misstatement of applicable New York law; there is no requirement that WQIS demonstrate actual prejudice to successfully urge the defense of late notice.

### 4. COVERAGE IS EXCLUDED UNDER THE POLICY AS A RESULT OF THE ALLEGED WILLFUL MISCONDUCT AND/OR GROSS NEGLIGENCE BY ATP WHICH WRONGFULLY DISCHARGED UNPERMITTED CHEMICALS AND OIL INTO THE GULF OF MEXICO LEADING TO THE UNDERLYING LITIGATION.

In addition to all of the foregoing reasons, coverage is excluded under the Policy as a result of the purported willful misconduct and/or gross negligence by ATP in discharging chemicals and oil into the Gulf of Mexico without a permit, which alleged wrongful activity served as the basis of the Underlying Litigation. The Policy provides for the following exclusion, among others:

---

[83] See, *Weeks Marine, Inc. v. American Steamship Owners Mutual Protection and Indem. Ass'n, Inc.*, 2011 A.M.C. 2077, 2084, 2011 WL 3796331 (S.D.N.Y. 2011).
[84] *Weeks Marine*, 2011 A.M.C. at 2484.
[85] *Id* at 2483, citing *Pactrans Air & Seas, Inc. v. New York Marine and General Ins. Co.*, 387 Fed.Appx. 43, 45 (2nd Cir. 2010).

PART III – **POLICY** EXCLUSIONS
SECTION A
*General Exclusions*

Notwithstanding any language in this **Policy** to the contrary, this **Policy** does not cover any loss caused directly, indirectly, or resulting from any of the following exclusions. Any such loss is excluded regardless of any other cause or event contributing concurrently or in sequence to the loss. There is no coverage for:

…

5.  The willful misconduct, including but not limited to gross negligence, of the **Assured**, or the willful misconduct of **the Owner or Operator** of the **Vessel**(s) if within the privity or knowledge of the **Assured;**[86]

When a dispute arises involving the terms of an insurance contract, New York insurance law provides that "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contact."[87] When the provisions are unambiguous and understandable, courts are to enforce them as written.[88] "[T]he initial interpretation of a contract is a matter of law for the court to decide."[89]

In this case the Policy provides coverage for certain types of discharges and/or releases. Notwithstanding any potential coverage for the discharge of chemicals and/or releases, the Policy specifically excludes coverage in clear language for discharges and/or releases that result from an insured's willful misconduct or gross negligence.[90]

It is undisputed that the United States has alleged that ATP circumvented its NPDES permit by installing a metal tube into an outfall pipe which was used to inject unauthorized chemicals into the Gulf of Mexico to break apart oil molecules into smaller, dispersed deposits.[91]

---

[86] See, the Policy at Part III, Exclusions, Dkt. No. 18-1, p. 6 of 19.
[87] See, *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Insurance Co.*, 472 F.3d 33, 42 (2nd Cir. 2006)(citation omitted).
[88] *Id.* (citations omitted).
[89] *Id.*
[90] See, the Policy at Part III, Exclusions, Dkt. No. 18-1, p. 6 of 19.
[91] See, Exhibit A at paragraphs 16-25.

The United States further alleged that the "illegal injection line was concealed in the rafters in a manner that prevented inspectors from discovering it"[92] for the reason that, on information and belief, the chemicals were injected through the metal tube contained within the outfall pipe for the purpose of "mask[ing] oil sheen on the ocean surface resulting from ATP's discharge of wastewater containing quantities of oil in excess of its NPDES permit limit."[93] The United States asserted that this wrongful activity occurred continuously from April 2007 through March 14, 2012[94] and therefore sought penalties under the Clean Water Act for "gross negligence or willful misconduct" on the part of ATP resulting from the unpermitted dispersal of chemicals and oil pollution into the Gulf of Mexico.[95] ATP's conduct falls within the exclusion contained in the Policy and WQIS therefore requests denial of Trustee's motion for partial summary judgment for this additional reason.

### 5. THERE IS NO COVERAGE UNDER THE POLICY BECAUSE TRUSTEE CANNOT SATISFY ATP'S BURDEN OF DEMONSTRATING A FORTUITOUS EVENT QUALIFYING AS AN "OCCURRENCE" AS DEFINED IN THE POLICY.

Finally, Trustee cannot satisfy ATP's burden of proof which requires evidence of a fortuitous event which qualifies as an "occurrence" as that term is defined in the Policy as required for coverage to arise. There has been no finding of coverage under the Policy at present. As such, Trustee's claim for indemnity and/or reimbursement for costs and expenses associated with the defense of the Underlying Lawsuit is not owed.

The Policy provides in Part I - Insuring Provisions, that it will:

> [i]ndemnify the **Assured** with respect to an **Occurrence** for such amounts as the Assured shall have become liable to pay and shall have paid for

---

[92] *Id.* at paragraph 77.
[93] *Id.* at paragraph 20.
[94] *Id.* at paragraph 14.
[95] *Id.* at paragraph 50-68.

> pollution response or damages, solely in its capacity as **Owner** and/or **Operator** of the **Vessel(s)** named on the Vessel Schedule;
>
> and
>
> reimburse the **Assured** with respect to an **Occurrence** for certain other costs and expenses, as described below, which the **Assured** shall have incurred in its capacity as **Owner** and/or **Operator** of the **Vessel(s)** ) named on the Vessel Schedule by reason of or with respect to SECTIONS A through H of Part I of the **Policy** under the following coverages:[96]

The Policy defines "occurrence" in Part V - Definitions:

> **Occurrence** means any one accident or series of accidents arising out of one event which gives rise or may give rise to loss, damage, cost, liability or expense claimed under this Policy including an insured violation of the vessel general permit, where the Occurrence commences on or after the Inception Date and Time and on or before the expiration Date and Time shown on the Declarations Page.[97]

As seen, the term "occurrence" was narrowed to only those events which qualify as an "accident." Regulation of marine insurance is, in most instances, properly left with the states.[98] Therefore, courts sitting in admiralty look to appropriate state law to provide the applicable insurance law principles necessary to resolve the litigants' insurance dispute.[99]

"The New York approach to the interpretation of contracts of insurance is to give effect to the intent of the parties as expressed in the clear language of the contract.[100] Unambiguous terms and provisions in an insurance contract will be given "their plain and ordinary meaning."[101]

---

[96] See, Part I – Insuring Provisions, Dkt. No. 18-1 at p. 2 of 19 (emphasis theirs).
[97] *Id* at Part V – Definitions, Dkt. No. 18-1, p. 9 of 19.
[98] See, *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).
[99] See, *Ingersoll-Rand Financial Corp. v. Employers Ins. of Wassau*, 771 F.2d 910, 912 (5th Cir. 1985).
[100] See, *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2nd Cir. 2002).
[101] *Id*. *(citations omitted); see also, *Scottsdale Indemnity Co. v. Beckerman*, 120 A.D.3d 1215 (N.Y. App. Div. 2014).

While the term "occurrence" is defined as "any one accident or series of accidents" in the Policy, there is no definition provided in the Policy for the term "accident." Black's Law Dictionary defines "accident" as

> An unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated; any unwanted or harmful event occurring suddenly, as a collision, spill, fall, or the like, irrespective of cause or blame…[102]

Similarly, the Merriam-Webster Dictionary defines the term "accident" as "an unforeseen and unplanned event or circumstance" and/or as "an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured but for which relief may be sought."[103]  An "occurrence" under the Policy is therefore limited to those events which qualify as being unintended, unforeseen, not reasonably anticipated, unwanted, unplanned, or unexpected.

That the Policy restricts an "occurrence" to only those events which qualify as an "accident" is neither unusual nor contrary to the public policy of New York insurance law. In fact, "insurance contract" is defined by N.Y. Ins. Law § 1101(a)(1) as "any agreement or transaction" between at least two parties (an insurer, on the one hand, and the insured or beneficiary, on the other) conferring a benefit from one to the other which is "***dependent upon the happening of a fortuitous event***"[104] and subsequently defines "fortuitous event" as meaning "any occurrence or failure to occur which is, or is assumed by the parties to be, to a substantial extend beyond the control of either party."[105]

The New York Court of Appeals, in *Consolidated Edison Co. of New York v. Allstate Insurance Co*., noted that "[i]nsurance policies generally require 'fortuity' and thus implicitly

---

[102] ACCIDENT, Black's Law Dictionary (10th ed. 2014).
[103] ACCIDENT, *Merriam-Webster.com*, 2015, http:// www.merriam-webster.com (27 February 2015).
[104] See, N.Y. Ins. Law § 1101(a)(1)(bolding and italicized portions of section 1101 supplied).
[105] *Id.* at subsection (a)(2).

exclude coverage for intended or expected harms."[106] The New York court proceeded to hold that:

> the requirement of a fortuitous loss is a necessary element of insurance policies based on either an "accident" or "occurrence." The insured has the initial burden of proving that the damage was the result of an "accident" or "occurrence" to establish coverage where it would not otherwise exist (See Northville Ind, U.S., 89 N.Y 2d at 634, 657 N.Y. S.2d 564, 679 N.E. 2d 1044).[107]

Under the facts and circumstances of this case, Trustee has not, and cannot, meet his burden of proving that the damage was the result of a fortuitous occurrence to trigger coverage under the Policy. The insured, ATP, injected an unpermitted chemical, Cleartron-ZB103, into the wastewater outfall pipe resulting in unlawful discharge into the Gulf of Mexico. ATP cannot argue in good faith that it was not aware of its own NPDES permit, but instead mistakenly purchased significant amounts of an unpermitted chemical for the alleged purpose of "mask[ing] oil sheen on the ocean surface resulting from [its] discharge of wastewater containing quantities of oil in excess of its NPDES permit limit."[108] Therefore, ATP either knew or should have known that the injection of the Cleartron-ZB-103 downstream of the NPDES sampling point would expose ATP to civil penalties if discovered by regulators.

Additionally, ATP knew or should have known that injecting Cleartron-ZB-103 into the wastewater outfall pipe would, or could, eliminate or limit any noticeable sheen on the surface of the water contrary to its obligation to monitor the surface of the water for a sheen in connection with wastewater discharges; there are few other rational purposes which would lead a party to conceal a pipe serving as an injection conduit of an unpermitted chemical oil dispersant into an area monitored for oil discharges with potential penalties for discharges over a permitted limit. These operations were within the control of ATP and occurred from April 2007 through March

---

[106] 774 N.E.2d 687, 692 (N.Y. 2002).

[107] Id.

[108] See, Exhibit A at paragraph 20, Complaint of United States of America in the Underlying Lawsuit.

14, 2012. The mechanical complexity in addition to the temporal element establishes that this was no fortuitous event. Rather, the sequence of actions over such a substantial period of time are more appropriately characterized as the antithesis of what otherwise qualifies as a "fortuitous event."

Since Trustee is unable to meet his burden of proving an "occurrence" as required by the Policy, this Court should deny his motion for partial summary judgment.

## 6.  REQUEST FOR ORAL ARGUMENT.

WQIS believes that oral argument will be beneficial to the Court in rendering a decision on this motion and therefore respectfully requests the Court to schedule the motion for oral argument.

## IV.      CONCLUSION

For all of the foregoing reasons, Defendant, Water Quality Insurance Syndicate, prays that the Motion for Partial Summary Judgment Regarding Duty to Defend [Dkt. No. 18] filed by Rodney Tow, Trustee, be denied.

Respectfully submitted,

MONTGOMERY BARNETT, L.L.P.

*/s/   Stephen L. Williamson*
STEPHEN L. WILLIAMSON (La. Bar No. 8316)
A. GORDON GRANT, JR. (La. Bar No. 6221)
PHILIP S. BROOKS, JR. (La. Bar No. 21501)
JEREMY D. RUSH (La. Bar No. 30705)
1100 Poydras Street, Suite 3300
New Orleans, LA 70163
Telephone:      (504) 585-3200
Facsimile:      (504) 585-7688
E-mail:         swilliamson@monbar.com
                ggrant@monbar.com
                pbrooks@monbar.com

*Attorneys for Water Quality Insurance Syndicate*

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 2, 2015, notice of this document will be electronically mailed to the parties registered or otherwise entitled to receive electronic notices in this adversary proceeding pursuant to the Electronic Filing Procedures in this District.

*/s/   Stephen L. Williamson*
STEPHEN L. WILLIAMSON (La. Bar No. 8316)
A. GORDON GRANT, JR. (La. Bar No. 6221)
PHILIP S. BROOKS, JR. (La. Bar No. 21501)
JEREMY D. RUSH (La. Bar No. 30705)
Montgomery Barnett, L.L.P.
1100 Poydras Street, Suite 3300
New Orleans, LA 70163
Telephone:      (504) 585-3200
Facsimile:      (504) 585-7688
E-mail:         swilliamson@monbar.com
                ggrant@monbar.com
                pbrooks@monbar.com
                jrush@monbar.com

*Attorneys for Water Quality Insurance Syndicate*