**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | | |
| **ATP OIL & GAS CORPORATION** | § § | |
| Debtor | § § § | **CASE NO. 12-36187** <br> **CHAPTER 7** |

_____

| | | |
|---|---|---|
| **RODNEY TOW, TRUSTEE** | § § | |
| Plaintiff | § § | |
| v. | § § | **ADVERSARY NO. 14-03280** |
| **WATER QUALITY INSURANCE SYNDICATE** | § § § | |
| Defendant | § | |

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN OPPOSITION TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT**

> **T. MICAH DORTCH**
> State Bar No. 24044981
> SDTX Bar No. 630903
> **COOPER & SCULLY, P.C.**
> 900 Jackson Street, Suite 100
> Dallas, Texas 75202
> Telephone: (214) 712-9500
> Facsimile: (214) 712-9540
> Micah.Dortch@cooperscully.com
> **ATTORNEY IN CHARGE FOR PLAINTIFF**
> **RODNEY TOW, TRUSTEE**

i

**OF COUNSEL**:

R. Brent Cooper
State Bar No. 04783250
SDTX Bar No. 18271
**COOPER & SCULLY, P.C.**
900 Jackson Street, Suite 100
Dallas, Texas  75202
Telephone:  (214) 712-9500
Facsimile:  (214) 712-9540
Brent.Cooper@cooperscully.com

Fred L. Shuchart
State Bar No. 18316250
SDTX Bar No.  11851
Christopher D. Lindstrom
State Bar No. 24032671
SDTX Bar No.  33525
**COOPER & SCULLY, P.C.**
815 Walker Street, Suite 1040
Houston, Texas  77002
Telephone:  (713) 236-6800
Facsimile:  (713) 236-6880
Fred.Shuchart@cooperscully.com
Chris.Lindstrom@cooperscully.com

# **TABLE OF CONTENTS**

Argument and Authorities in Reply ........................................................................................... 1

I.   WQIS Must Reimburse ATP for Attorney Fees and Expenses Incurred ............................ 2

II.  Texas Law Applies ............................................................................................................. 3

III. Even if New York Law Applies, WQIS Must Establish Prejudice – The ATP Innovator Is Not an "Ocean Going Vessel" Under the Statute ........................................... 8

IV.  Tow Has Established an Occurrence ................................................................................ 11

V.   WQIS Failed to Sustain its Burden to Establish the Underlying Lawsuit is Excluded from Coverage ................................................................................................. 12

Conclusion ................................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Albany Insur. Co. v. Kieu*, 927 F .3d 882 (5th Cir. 1991) .................................................................. 4

*Amer. Nat'l Ins. Co. v. Conestoga Settlement Trust*, 2014 WL 3734215 (Tex. App.—San Antonio July 30, 2014, pet. filed) ........................................................................................... 7

*ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49 (S.D. Tex. 2007) ......................................... 4

*ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278 (S.D. Tex. 2008) ................................... 4

*Chan v. Society Expeditions, Inc.*, 123 F.3d 1287 (9th Cir. 1997) ................................................ 5

*Cheek v. Williams—McWilliams Co., Inc.*, 697 F.2d 649 (5th Cir. 1983) ................................... 12

*Citizens Ins. Co. of Amer. v. Daccach*, 217 S.W.3d 430 (Tex. 2007) ...................................... 5, 7

*De Santis v. Wackenhut*, 793 S.W.2d 670 (Tex. 1990) ........................................................... 4, 6, 7

*Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236 (5th Cir. 2009) . 4, 7

*Hartford Fire Ins. v. Mitlof*, 123 F.Supp.2d 762 (S.D.N.Y.2000) ................................................. 10

*In re Cyrus II P'ship*, 413 B.R. 609 (Bankr. S.D. Tex. 2008) ....................................................... 4

*Ingersoll–Rand Fin. Corp. v. Employers Ins. of Wasau*, 771 F.2d 910 (5th Cir. 1985) ................ 4

*Ins. Co. of N. Am. v. Zaglool*, 526 F. Supp. 2d 361 (E.D.N.Y. 2007) ......................................... 10

*Jefferson Ins. Co. v. Cassella*, 261 F. Supp. 2d 160 (E.D.N.Y.2003), *vacated on other grounds in part on reconsideration*, 2003 WL 23411876 (E.D.N.Y.2003) ............................. 10

*Marine Ins. Co., Ltd. v. Cron*, No. 3:13–CV–00437, 2014 WL 4982418 (S.D. Tex. Oct. 6, 2014) ........................................................................................................ 7

*PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630 (Tex. 2008) ......................................................... 7

*Progressive Northeastern Ins. Co. v. Amer. Ins. Co.*, 2001 WL 959183 (S.D.N.Y. Aug.21, 2001) ................................................................................................... 10

*Weeks Marine, Inc. v. American Steamship Owners Mutual Protection and Indem. Ass'n, Inc.*, No. 08 Civ. 9878(NRB), 2011 WL 3796331 (S.D.N.Y. 2011) .............................................. 11

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S. Ct. 368, 99 L. Ed. 337 (1955) ................................................................................................................ 4

*Woods–Tucker Leasing Corp. of Ga. v. Hutcheson–Ingram Dev. Co.*, 642 F.2d 744, 748 (5th Cir.1981) .................................................................................................................... 4

**Statutes**

28 U.S.C. § 1333 ............................................................................................................... 4

28 U.S.C. § 1334 ............................................................................................................... 4

33 U.S.C. § 1319(d) ........................................................................................................ 11

N.Y. Ins. Law § 1113(a)(21) ............................................................................................. 9

N.Y. INS. LAW § 3420(a)(5) (McKinney) ......................................................................... 8

N.Y. INS. LAW § 3420(i) ................................................................................................... 9

N.Y. INS. LAW §§ 101-9901 ............................................................................................. 9

N.Y. INS. LAW §§ 3420(i), 2117(b)(3) ............................................................................. 9

N.Y. INS. LAW § 3420 ............................................................................................. 7, 8, 11

TEX. INS. CODE ANN. art. 21.42 .............................................................................. 5, 6, 7, 8

**Other Authorities**

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) ............................................... 5

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971) ........................................... 5

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ATP OIL & GAS CORPORATION | § | |
| | § | CASE NO. 12-36187 |
| Debtor | § | |
| | § | CHAPTER 7 |
| | § | |
| RODNEY TOW, TRUSTEE | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | ADVERSARY NO. 14-03280 |
| | § | |
| WATER QUALITY INSURANCE SYNDICATE | § | |
| | § | |
| Defendant | § | |

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM IN OPPOSITION TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE MARVIN ISGUR:**

COMES NOW, Plaintiff Rodney Tow, Trustee (herein "Tow"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, and respectfully files this Reply to Memorandum in Opposition to the Motion for Partial Summary Judgment filed by Water Quality Insurance Syndicate ("WQIS") and would respectfully show as follows:

**ARGUMENT AND AUTHORITIES IN REPLY**

WQIS owed and continues to owe ATP Oil & Gas Corporation ("ATP") reimbursement for defense expenses in the lawsuit styled Cause No. 2:13-CV-00262; *United States of America v. ATP Oil and Gas Corporation, et al.*; In the United States District Court for the Eastern

1

District of Louisiana ("Underlying Lawsuit"). Texas law applies to the construction of the Policy, under which WQIS owes ATP the obligation. WQIS has not shown prejudice resulting from any purported delay in notice; the Underlying Lawsuit alleges an "occurrence" as defined by the Policy and contains allegations which do not constitute gross negligence and/or willful misconduct.

## I.    WQIS Must Reimburse ATP for Attorney Fees and Expenses Incurred

In its opposition to Tow's Motion for Partial Summary Judgment, WQIS makes the semantic argument that it has no duty to defend and its obligation to reimburse ATP for defense expenses is not triggered until those expenses are actually paid by ATP. <u>Importantly, WQIS does not dispute that ATP has incurred attorney fees and expenses in defending the Underlying Lawsuit.</u>

WQIS ignores the plain and unambiguous language of its own policy. Contrary to its assertion, the duty to reimburse for defense expenses is triggered as soon as those expenses are incurred. The policy provides the following provision:

### PART 1—INSURING PROVISIONS

\* \* \*

Indemnify the **assured** with respect to an **occurrence** for such amounts as the **assured** shall have become <u>liable to pay</u> and <u>shall have paid</u> . . .

AND

Reimburse the **assured** with respect to an **occurrence** for certain other costs and expenses, as described below, which the **Assured** <u>shall have incurred</u> . . . .

(emphasis supplied). (Dkt. 18-1 at p. 3).

2

There is a striking difference between the two provisions. With respect to the obligation to indemnify, the provision specifically states that the amounts must be paid; yet, with respect to reimbursement for expenses, the provision only requires that the assured incur them.

A review of other provisions of the policy makes it clear that WQIS knew the difference between paying and incurring. In Section B, Investigation and Defense, the policy provides: "reasonable attorney fees, investigation costs and defense expenses <u>incurred</u> by the **Assured** . . ." (Dkt. 18-1 at p. 4). Under Section C, U.S. Fines & Penalties, the last sentence states: "In addition, costs and expenses <u>incurred</u> by the **Assured** . . ." (Dkt. 18-1 at p. 5). In Section H, U.S. Criminal Defense, the policy provides: "reasonable costs and expenses <u>incurred</u> by the **Assured** . . ." (Dkt. 18-1 at p. 6). In every provision in the policy that refers to costs and expenses, the policy states it must be incurred, yet none of those provisions require that the expense be incurred and paid. On the other hand, for example, with respect to coverage afforded for mitigation, Section F provides: "This **Policy** shall reimburse the **Assured** for the actual costs and expenses <u>incurred and paid</u> . . ." (emphasis added) (Dkt. 18-1 at p. 5).

This Honorable Court can not ignore the difference in the provisions drafted by WQIS and must conclude that WQIS owes reimbursement for defense costs and expenses once they are incurred and they do not have to be paid. Accordingly, Tow is entitled to a declaration that WQIS must reimburse Tow for the defense costs incurred in the Underlying Lawsuit.

## II.     Texas Law Applies

WQIS urges that, under maritime choice-of-law rules, federal maritime law or New York law applies because of the choice-of-law clause in the Policy. (Dkt. 20 at 11-15). But Texas law should apply under a choice-of-law analysis.

This Court is not bound by a rigid maritime choice-of-law rule in this case. In contrast to cases WQIS relies upon—like *Durham Auctions*[1]—this Court has jurisdiction of the adversary proceeding arising out of ATP's bankruptcy filing pursuant to 28 U.S.C. § 1334, not by virtue of admiralty or maritime law under 28 U.S.C. § 1333. *See In re Cyrus II P'ship*, 413 B.R. 609, 615-21 (Bankr. S.D. Tex. 2008); *ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 60-61 (S.D. Tex. 2007), *on reconsideration in part sub nom. ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278 (S.D. Tex. 2008). And ultimately, *state insurance law* principles will determine the validity of the ATP estate's claim under the Policy, appurtenant to the bankruptcy proceeding, even if the Policy is one of marine insurance. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 321, 75 S. Ct. 368, 374, 99 L. Ed. 337 (1955) ("We, like Congress, leave the regulation of marine insurance where it has been—with the States."); *Albany Insur. Co. v. Kieu*, 927 F .3d 882, 886 (5th Cir. 1991) ("State law is particularly significant in marine insurance disputes . . . "); *Ingersoll–Rand Fin. Corp. v. Employers Ins. of Wasau*, 771 F.2d 910, 912 (5th Cir. 1985) ("[T]he interpretation of a contract of marine insurance is—in the absence of a specific and controlling federal rule—to be determined by reference to appropriate state law." (*citing Wilburn Boat Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955)).

Fifth Circuit bankruptcy courts apply general federal choice-of-law rules or the choice-of-law rules of the forum in which they sit over state-law claims that do not implicate federal policy. *See In re Cyrus II P'ship*, 413 B.R. at 613-14; *ASARCO LLC*, 382 B.R. at 60-61 (citing *Woods–Tucker Leasing Corp. of Ga. v. Hutcheson–Ingram Dev. Co.*, 642 F.2d 744, 748 (5th Cir.1981)). Both federal and Texas choice-of-law rules look to the Restatement (Second) of Conflict of Laws. *See In re Cyrus II P'ship*, 413 B.R. at 615-21; *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990).

---

[1] *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009).

4

As Tow previously indicated, the first inquiry under the Restatement is whether the particular substantive law is subject to a clear choice of law determination by the legislature of the forum state.  (Dkt. 18, ¶ 16); *see also Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971)).  As discussed, the Texas Legislature has made a clear choice of law determination with the enactment of Article 21.42 of the Texas Insurance Code (Dkt. 18, ¶ 19).  Thus, Texas law should apply to the interpretation of the Policy.

Even if maritime choice-of-law rules apply, as WQIS urges, that analysis compels application of Texas substantive law.  As WQIS notes, admiralty courts will generally give effect to choice-of-law clause in a contract.  (Dkt. 20 at 13-14) (citing *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287 (9th Cir. 1997)).  But the *Chan* court continued, stating that a contractual choice-of-law provision will not be given effect if:

> the party challenging the enforcement of the provision can establish that enforcement would be unreasonable and unjust, the clause was invalid for such reasons as fraud or overreaching, *or enforcement would contravene a strong public policy of the forum in which suit is brought*.

*Chan*, 123 F.3d at 1297 (emphasis added) (internal citations omitted).  The court went on to analyze the choice-of-law clause under the Restatement factors, and whether

> "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue" and that state would be the state of applicable law in the absence of a choice-of-law clause.

*Id.* (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)).  The court concluded that the plaintiffs made no showing that application of the chosen law (U.S. law) would contravene a fundamental Liberian policy or that Liberia had a materially greater interest in the issue than the U.S.  *Chan*, 123 F.3d at 1298.

5

Here, application of New York law *would* contravene the fundamental policy of a state which has a materially greater interest (Texas) in the issue and whose law would apply absent a choice-of-law clause.

As previously discussed, Texas has the materially greater interest in interpreting the Policy and protecting its insureds. (*See* Dkt. 18, ¶ 21). ATP is a Texas corporation with its principal place of business in Texas. (Dkt. 1, ¶ 22; Dkt. 18, ¶ 21). The policy of insurance at issue was brokered by a Texas corporation located in Houston and was eventually delivered to ATP in Houston. (Dkt. 18-1, at 1). The policy is payable to a Texas resident. (*Id.*). The oil platform at issue was located off of the shore of Louisiana and the Underlying Lawsuit is filed in Louisiana. (*See* Dkt. 18-2, ¶ 12). The only relationship to New York is the location of WQIS in New York and the Policy's issuance in New York, a relationship which is diluted by the fact that WQIS is an insurance syndicate comprising fifteen different subscribers located in eight states ranging from Minnesota to Massachusetts. (*See* Dkt. 18-1, at 8, 12). The single contact with New York by virtue of WQIS's location there is insufficient. Texas has the most significant relationship to the transaction and the parties. *See De Santis v. Wackenhut*, 793 S.W.2d 670, 679 (Tex. 1990).

Further, application of New York law would be contrary to a fundamental policy of the state of Texas. Again, Texas has a strong fundamental policy in ensuring that insurance policies sold to its citizens are governed by Texas law:

> **ARTICLE 21.42. TEXAS LAWS GOVERN THE POLICIES**
>
> Any contract of insurance *payable to any citizen or inhabitant of this State* by any insurance company or corporation doing business within this State *shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby*, notwithstanding such policy or contract of insurance may provide that the contract was executed and the

6

> premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same.

TEX. INS. CODE ANN. art. 21.42 (emphasis supplied).  The Texas Legislature has made a clear choice of law determination with the enactment of Article 21.42 of the Texas Insurance Code. (*See* Dkt. 18, ¶¶ 16-19) (discussing *Citizens Ins. Co. of Amer. v. Daccach*, 217 S.W.3d 430 (Tex. 2007); *Amer. Nat'l Ins. Co. v. Conestoga Settlement Trust*, 2014 WL 3734215 (Tex. App.—San Antonio July 30, 2014, pet. filed)).

This statute also distinguishes the decision in *Durham Auctions*, upon which WQIS relies.  There, the Mississippi statute "[did] not expressly speak to any relevant substantive rule concerning insurance policies or choice of law."  *Durham Auctions*, 585 F.3d at 244.  In stark contrast, Article 21.42 expressly states that an insurance contract payable to a Texas inhabitant shall be governed by <u>Texas law</u>.  The Legislature clearly intended that Texas insureds would be protected by Texas law.  Application of the New York choice-of-law clause would frustrate Texas policy.  *See De Santis*, 793 S.W.2d at 677-85.

Application of the clause would also be contrary to Texas policy that an insurer must show prejudice before denying coverage based on untimely notice.  As discussed in detail below, WQIS contends that it need not show prejudice under New York Insurance Law Section 3420 because WQIS contends that the Policy does fall within the statute's requirements.  (*See* Dkt. 20 at 19-20).  But application of New York law in this manner would thwart Texas fundamental policy—as expressed in the Texas Supreme Court's repeated decisions—that an insurer cannot rely on untimely notice to defeat coverage unless it has shown prejudice.  *See PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630 (Tex. 2008); *see also Marine Ins. Co., Ltd. v. Cron*, No. 3:13–CV–00437, 2014 WL 4982418 (S.D. Tex. Oct. 6, 2014) (noting that, even if New York law did not run contrary to the fundamental purposes of maritime law, the court would examine whether

7

the doctrine conflicted with fundamental purpose of the Texas insurance law that would apply in the absence of the choice-of-law provision).[2]  Because of this, Texas law should apply, and WQIS must show that it was prejudiced by any alleged delay in notice.

For the reasons explained above and in Tow's motion, Texas law must apply to the construction of the Policy.  *See* TEX. INS. CODE ANN. art. 21.42.

### III. Even if New York Law Applies, WQIS Must Establish Prejudice – The ATP Innovator Is Not an "Ocean Going Vessel" Under the Statute

In its motion, Tow asserted that even if New York law applies based on the choice-of-law clause in the Policy, Section 3420 of the New York Insurance Law requires that an insurer demonstrate prejudice resulting from a failure to give timely notice:

> (a) No policy or contract insuring against liability for injury to person, except as provided in subsection (g) of this section, or against liability for injury to, or destruction of, property shall be issued or delivered in this state, unless it contains in substance the following provisions or provisions that are equally or more favorable to the insured and to judgment creditors so far as such provisions relate to judgment creditors:
>
> (5) A provision that failure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide timely notice has prejudiced the insurer, except as provided in paragraph four of this subsection. With respect to a claims-made policy, however, the policy may provide that the claim shall be made during the policy period, any renewal thereof, or any extended reporting period, except as provided in paragraph four of this subsection. As used in this paragraph, the terms "claims-made policy" and "extended reporting period" shall have their respective meanings as provided in a regulation promulgated by the superintendent.

N.Y. INS. LAW § 3420(a)(5) (McKinney)

As WQIS acknowledges, Section 3420 "create[s] a burden on the part of the insurer to demonstrate actual prejudice to successfully satisfy late notice as a defense to coverage . . . ."

---

[2]  Analysis of whether federal maritime law would frustrate Texas policy provides no guidance because federal maritime law does not regulate insurance notice provisions or speak to prejudice related thereto, as WQIS acknowledges.  (Dkt. 20 at 16).

(Dkt. 20 at 19). WQIS asserts, however, that this statute does not apply to marine insurance policies. (*Id.*) (citing N.Y. INS. LAW § 3420(i)). The types of insurance excepted from the prejudice requirement are found in Section 2117(b)(3) of the code. *See* N.Y. INS. LAW §§ 3420(i), 2117(b)(3). Section 2117(b)(3) lists:

> (b)(3) marine insurance of the following kind or kinds, where it is reasonable so to do with due regard to the interests of all concerned and whether or not, at the time of such negotiation, the subject matter of such insurance is within or without this state:
>
> > (A) insurance against perils of navigation, transit or transportation upon hulls, freights or disbursements, or other shipowner interests, goods, wares, merchandise and all other personal property and interests therein, in course of exportation from or importation into any country, or transportation coastwise, including transportation by land or water from point of origin to final destination and including war risks and marine builders' risks; and
> >
> > (B) insurance in connection with **ocean going vessels** against any of the risks specified in paragraph twenty-one of subsection (a) of section on thousand one hundred thirteen of this chapter.

(emphasis added). Paragraph A is not applicable; the Policy is a pollution policy, not one insuring against perils of navigation, transit, etc. on hulls or other property of the ship owner. (*See* Dkt. 18-1). That only leaves paragraph B, which excepts insurance in connection with "ocean going vessels against any of the risks specified in [N.Y. Ins. Law § 1113(a)(21)]."

The ATP Innovator is not an "ocean going vessel" under the terms of the statute or the Policy. Neither Section 2117 nor any other provision of the New York Insurance Law defines "ocean going vessel;" thus, it does not support that the ATP Innovator is an "ocean going vessel." *See generally*, N.Y. INS. LAW §§ 101-9901. But New York common law provides the test for whether a particular vessel is an "ocean going vessel."

Whether a vessel is an ocean-going vessel depends not on the "ocean going" capabilities of a particular vessel, but rather on the relevant policy's "Policy Territory." *Ins. Co. of N. Am. v.*

9

*Zaglool*, 526 F. Supp. 2d 361, 366 (E.D.N.Y. 2007) (citing *Jefferson Ins. Co. v. Cassella*, 261 F. Supp. 2d 160, 164–165 (E.D.N.Y.2003), *vacated on other grounds in part on reconsideration*, 2003 WL 23411876 (E.D.N.Y.2003); *Progressive Northeastern Ins. Co. v. Amer. Ins. Co.*, 2001 WL 959183, at *10-11 (S.D.N.Y. Aug.21, 2001)); *Hartford Fire Ins. v. Mitlof*, 123 F.Supp.2d 762, 766–767 (S.D.N.Y.2000).

For example, in *Progressive*, the "Policy Territory" was confined to the land, tributaries, inland lakes, bays and rivers of the continental United States or Canada, including the Long Island Sound. *Progressive Northeastern*, 2001 WL 959183, at *3. In *Hartford Fire*, the policy was geographically limited to "Inland & Coastal Waters of Hudson River Between Verrazano Narrows Bridge & Albany, Including East River & Western Long Island . . . ." *Hartford Fire*, 123 F.Supp.2d at 766–767. Based upon these geographic descriptions, both of these courts concluded that the vessels at issue were not "ocean going vessels." *Id.*; *Progressive Northeastern*, 2001 WL 959183, at *3; *cf. Zaglool*, 526 F. Supp. 2d at 366 (language "Atlantic coastwise" indicated that the vessel was an ocean-going vessel for purposes of New York Insurance Law § 2117(b)(3)(B)).

Here, the Policy <u>does not</u> define "ocean going vessel." (*See* Dkt. 18-1). The Policy's declarations do not describe the "express geographic limits." (*Id.*). The Policy does not describe a "Policy Territory." (*Id.*). Given this silence, and that WQIS seeks to avoid coverage based on a warranty provision, this Court should rule in favor of coverage. *See Zaglool*, 526 F. Supp. 2d at 368 ("Insurance policies are to be construed in favor of the insured and this rule is applied with particular diligence in construing the meaning of a warranty or exclusion from coverage.").

Common sense also compels that the ATP Innovator is not an "ocean going" vessel as contemplated by the statute. The ATP Innovator, like many drilling platforms, must be towed to

10

the drilling site, where it is anchored to the sea floor.[3]  Therefore, WQIS cannot rely on the "ocean going vessel" exclusion from the prejudice requirement of Section 3420.[4]

And as explained in Tow's motion, WQIS has not been prejudiced by any alleged delay in notice. (Dkt. 18, ¶¶ 46-48).  This Court should grant Tow's Motion for Summary Judgment.

## IV.  Tow Has Established an Occurrence

WQIS spends four pages of its Opposition setting forth a litany of case law regarding what constitutes an "occurrence."  Included in its discussion are WQIS' unsupported conclusions that ATP actions could not constitute an occurrence.

WQIS' analysis is fatally flawed because WQIS fails to address the clear and unambiguous language of the definition of occurrence contained in its own policy.  As set forth in the Motion for Partial Summary Judgment, the definition of occurrence provides, in part:

> (5)    **Occurrence** means any one accident or series of accidents . . . including an insured violation of the **Vessel General Permit** . . ..

As set forth in the clear and unambiguous language of the definition, a violation of the Vessel General Permit is, in and of itself, considered an occurrence.  WQIS does not nor can not dispute that, under Section C, the policy specifically insures violations of the Vessel General Permit and penalties under 33 U.S.C. § 1319(d), among others. (Dkt. 18-1 at pp. 4-5). WQIS does not nor can not deny that in Cause of Action No. 2, the United States of America specifically pleads for recovery of penalties under 33 U.S.C. § 1319(d). (Dkt. 18-2 at pp. 9-10). Accordingly, the allegations in Cause of Action No. 2, by definition, constitute an occurrence.

---

[3]    In the complaint filed by the United States against ATP, the government alleges: "The ATP Innovator is **permanently moored** to the sea floor at that location . . . ." (Dkt. 20-1, ¶ 12) (emphasis supplied).

[4]    *Weeks Marine, Inc. v. American Steamship Owners Mutual Protection and Indem. Ass'n, Inc*., No. 08 Civ. 9878(NRB), 2011 WL 3796331 (S.D.N.Y. 2011)—cited by WQIS—did not involve or examine the "ocean going vessel" requirement and is inapplicable.

Additionally, WQIS failed to consider allegations in the Complaint which clearly allege an accident. For example, Paragraph 45 alleges that "ATP failed to minimize or prevent unlawful discharges …." (Dkt. 18-2 at p. 10). Paragraph 46 alleges that "ATP failed to properly operate and maintain all facilities and treatment systems …." (Dkt. 18-2 at p. 10). WQIS can not seriously contend that those allegations allege intentional conduct.

### V.  WQIS Failed to Sustain its Burden to Establish the Underlying Lawsuit is Excluded from Coverage

In its Opposition to Tow's Motion for Partial Summary Judgment, WQIS asserts that it has no obligation to reimburse ATP for its defense costs and expenses because the claims are excluded by the willful misconduct exclusion. As with its other positions, WQIS fails to consider the entire picture and would have this Court ignore critical allegations.

Under an indemnity policy, a carrier's obligation to reimburse its insured's costs and expenses is determined similarly to the duty to defend under a standard policy. That is, whether the asserted claims would be covered if proven true. *Cheek v. Williams—McWilliams Co., Inc.*, 697 F.2d 649 (5th Cir. 1983). In *Cheek*, an oil derrick employee brought a personal injury action against its employer who brought a third party action for indemnity and contribution against Crew Boat Service. The third party complaint alleged that the third party plaintiff leased a stand by boat from the third party defendant which was not available because it was unsafe to operate. The jury found in favor of the third party defendant. The insured sued its carrier seeking reimbursement of the defense costs. The carrier initially declined on the basis of a "breach of contract" exclusion. This Court rejected the carrier's position. In doing so, this court concluded that the allegations contained in the lawsuit could be construed as stating a negligence action in addition to a breach of contract and therefore did not necessarily fall within the exclusion. As a

result, this Court concluded that the carrier had an obligation to reimburse the insured its defense costs.

WQIS' analysis fails to take all the allegations in the lawsuit. The Complaint contains allegations that certainly sound in negligence and which would not constitute willful misconduct or gross negligence. For example, in addition to the allegations cited in the previous section, Paragraph 75 alleges that ATP failed to operate and maintain the float cell in a manner that is protective of the environment (Dkt. 18-2 at p. 14); Paragraph 76 alleges that "ATP failed to take measures to prevent discharges" (Dkt. 18-2 at pp. 14-15). and Paragraph 77 alleges that ATP "failed to properly operate the wastewater treatment system …." (Dkt. 18-2 at p. 15). All those allegations would impose liability on ATP, if proven, without a need to prove that ATP acted willfully or grossly negligent and therefore do not fall within the exclusion. Accordingly, WQIS has an obligation to reimburse ATP for its defense costs and expenses incurred in the Underlying Lawsuit.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff Rodney Tow, Trustee, respectfully prays that his Motion be granted; that this Honorable Court enter an Order declaring that Water Quality Insurance Syndicate has an obligation to reimburse ATP Oil & Gas Corporation for its defense costs and expenses incurred in the Underlying Lawsuit and for such other and further relief as this Court may deem just and proper.

                Respectfully Submitted,


By:    */s/ T. Micah Dortch*
       **T. MICAH DORTCH**
       State Bar No. 24044981
       SDTX Bar No. 630903

**COOPER & SCULLY, P.C.**
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone: (214) 712-9500
Facsimile: (214) 712-9540
Micah.Dortch@cooperscully.com

**ATTORNEY IN CHARGE FOR PLAINTIFF RODNEY TOW, TRUSTEE**

**OF COUNSEL**:

R. Brent Cooper
State Bar No. 04783250
SDTX Bar No. 18271
**COOPER & SCULLY, P.C.**
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone: (214) 712-9500
Facsimile: (214) 712-9540
Brent.Cooper@cooperscully.com

Fred L. Shuchart
State Bar No. 18316250
SDTX Bar No. 11851
Christopher D. Lindstrom
State Bar No. 24032671
SDTX Bar No. 33525
**COOPER & SCULLY, P.C.**
815 Walker Street, Suite 1040
Houston, Texas 77002
Telephone: (713) 236-6800
Facsimile: (713) 236-6880
Fred.Shuchart@cooperscully.com
Chris.Lindstrom@cooperscully.com

14

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to all known counsel of record as indicated below by certified mail, return receipt requested, facsimile and/or hand delivery on this 17th day of March, 2015.

| | |
|---|---|
| Stephen L. Williamson | [ ] via certified mail/return receipt requested |
| A. Gordon Grant, Jr. | [ ] via regular mail |
| Philip S. Brooks, Jr. | [ ] via facsimile - (504) 585-7688 |
| Jeremy D. Rush | [ ] via hand delivery |
| Montgomery Barnett, L.L.P. | [X] via ECF |
| 1100 Poydras Street, Suite 3300 | |
| New Orleans, LA 70163 | |
| | |
| Peri H Alkas | [ ] via certified mail/return receipt requested |
| Patricia Hair | [ ] via regular mail |
| Phelps Dunbar, LLP | [ ] via facsimile – (713) 626-1388 |
| 500 Dallas Street, Suite 1300 | [ ] via hand delivery |
| Houston, TX 77002 | [X] via ECF |

                                          /s/ T. Micah Dortch_____ __
                                          **T. MICAH DORTCH**

D/923095v2