

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
06/05/2015

| | | |
|---|---|---|
| IN RE: | § | |
| **ATP OIL & GAS CORPORATION** | § | **CASE NO: 12-36187** |
| Debtor(s) | § | |
| | § | **CHAPTER 7** |
| | § | |
| **RODNEY  TOW,** | § | |
| Plaintiff | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 14-3280** |
| | § | |
| **WATER QUALITY INSURANCE** | § | |
| **SYNDICATE,** *et al* | § | |
| Defendants. | § | |

<u>**MEMORANDUM OPTION ON MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

Notwithstanding ATP's failure to give timely notice under its insurance policy, Water Quality Insurance Syndicate must reimburse ATP for ATP's defense costs and expenses incurred in defending *United States v. ATP Oil & Gas Corp., et al.,* C.A. 2:13-cv-00262-NJB-KWR pending in the United States District Court for the Eastern District of Louisiana.

**Background**

Pursuant to a one-year insurance policy issued on November 17, 2011, Water Quality insured ATP against certain pollution-related losses.  On February 11, 2013, the United States sued ATP for discharging pollutants from an offshore platform located in the Gulf of Mexico. The lawsuit seeks damages from ATP.  The damages include alleged violations that occurred within the policy period (i.e., between November 17, 2011 and March, 2012).

The insurance policy required ATP to give "immediate notice" of any occurrence that gave rise to a claim under the policy.  It is undisputed that ATP failed to give notice as required by the policy.  The United States notified ATP of its alleged violations on March 14, 2012.  It

filed suit on the alleged violations on February 11, 2013.  ATP delayed giving notice to Water Quality until September 12, 2013.

The insurance policy excluded coverage arising out of ATP's "willful misconduct."  The bulk of the lawsuit against ATP alleges willful misconduct by ATP.  The United States alleges that ATP constructed and operated a hidden tube to allow ATP to utilize an unpermitted chemical dispersant.  The use of this dispersant would mask discharges of oil in wastewater that was discharged from the platform.  Nevertheless, the lawsuit does contain a few allegations regarding the negligent operation of the platform.  For example, paragraph 75 of the lawsuit alleges that ATP failed to operate the primary float system that would have limited oil in the wastewater "in a manner that is protective of the environment, resulting in the discharge of oil in quantities that may be harmful to the Gulf of Mexico."  Paragraph 77 alleges that ATP failed "to properly operate the wastewater treatment system…."

ATP has been required to defend the lawsuit.  Water Quality has refused to reimburse ATP for its defense costs and expenses.

On February 6, 2015, ATP filed a motion for partial summary judgment seeking a declaration of the rights and obligations under the policy with respect to the duty to provide reimbursement.  On March 2, 2015, Water Quality responded.  Various additional filings were made by both parties after that date.

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[1] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412

---

[1] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

(5th Cir. 2008).   The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403.   Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326.   The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).   The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).   Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412.   Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324.   The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

### Choice of Law

This adversary proceeding was commenced under 28 U.S.C. § 1334.   The parties skirmish about whether this Court should apply maritime law or bankruptcy law for the purpose of determining choice of law.   Water Quality alleges that Fed. R. Bankr P. 7009(h)(1) extinguishes any difference.   The Court disagrees.   Rule 7009(h)(1) applies Fed. R. Civ P. 14(c),

38(e) and 82 in bankruptcy cases that pertain to admiralty matters.  None of those provisions assist in the choice of law analysis.

This Court has jurisdiction over this lawsuit under its "related to" jurisdiction under 28 U.S.C. § 1334(b).  Of course, when a matter arises under the Court's "related to" jurisdiction, the Court must apply the substantive law applicable to the dispute.  Choice of law provisions are substantive, not procedural.  *Boyd Rosene and Assoc., Inc. v. Kansas Mun. Gas Agency,* 174 F.3d 1115 (10th Cir. 1999).  Moreover, in an admiralty case, federal common law requires that choice of law be determined in accordance with the approach in the Restatement (Second) of Conflicts of Laws.  *Chan v. Soc'y Expeditions, Inc.,* 123 F.3d 1287 (9th Cir. 1997).

The insurance policy is a policy for maritime insurance.   Contracts for maritime insurance are "maritime contracts" within the meaning of the Admiralty Clause of the Constitution, and within federal jurisdiction.  *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313 (1955).  Part IV, Section B, Paragraph 1 of the insurance policy provides that  "the law applicable to the interpretation of this Policy of insurance and the rights and obligations … hereunder shall be the federal maritime law of the United States or, in the absence of federal maritime law of the United States, the law of the State of New York, without regard for New York's choice of law rules."

Although federal maritime law is the primary choice of law in the contract, it is settled that the United States has "not taken over the regulation of marine insurance contracts."  *Id.*.  Nevertheless, if there is a federally established rule concerning notice, that rule would govern.  *Id.*  Neither party can point to such a rule, and the Court has not located one.  Accordingly, the choice of law provision must be made in accordance with the policies contained in the Restatement.

The choice of law question may be outcome-determinative in this case.  The issue is whether to apply New York law (as required by the policy) or Texas law (as the home of the insured).  Here is the conflict:

**Texas**

Texas has a straightforward statute that determines applicable law when an insurance policy is sold to a citizen or inhabitant of Texas:

> Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same.

Tex. Ins. Code § 21.42.

Tow cites a Texas trilogy of Supreme Court cases that establish that an insurer must demonstrate prejudice before it will be allowed to enforce a notice provision in its insurance policy.  In *PAJ, Inc. v. Hanover Insurance Co.,* 243 S.W.3d 630 (Tex. 2008), the Texas Supreme Court held that a failure to give notice in accordance with the policy would not constitute a defense, unless the failure resulted in prejudice to the insurer.

Fourteen months later, the Texas Supreme Court issued two opinions.  In *Prodigy Communications Corp. v. Agricultural Excess & Surplus Insurance Co.,* 288 S.W.3d 374, 382-83 (Tex. 2009) the Court held that "[i]n a claims-made policy, when an insured notifies its insurer of a claim within the policy term or other reporting period that the policy specifies, the insured's failure to provide notice 'as soon as practicable' will not defeat coverage in the absence of prejudice to the insurer."  *Financial Industries Corp. v. XL Specialty Insurance Co.,* 285

S.W.3d 877 (Tex. 2009), issued on the same date, relied on *Prodigy* and reiterated that Texas required a showing of prejudice from untimely notice in a claims-made policy.

**New York**

New York generally subscribes to the requirement that prejudice must be shown for a notice provision in an insurance policy to serve as a valid defense to coverage.  This general policy is embodied in Article 34 § 3420 of the New York Statutes:

> No policy or contract insuring against liability for injury to person … or property … shall be issued or delivered in this state, unless it contains… a provision that failure to give any notice required to be given by such policy within the time described therein shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide notice has prejudiced the insurer…

Nevertheless, the provisions of § 3420 are inapplicable to "insurance in connection with ocean going vessels against any of the risks specified in [subsection (a)(21)]."  Subsection (a)(21) deals with marine protection and indemnity insurance.

Although ATP attempts to argue that its vessels were not ocean going vessels (an undefined term in the statue), the Court gives little weight to this argument.  The insurance policy is for the "self propelled" vessel the ATP Innovator (ECF No. 18-1, page 2.).  The vessel was in the ocean (the Gulf of Mexico).  Although the vessel was tethered to the ocean floor, it remained a vessel that was in the ocean.  The fact that it wasn't "going" anywhere at the time of the incident does not make it a vessel that was not an "ocean going vessel" as referenced in New York law.

For insurance policies that are not governed by the "prejudice" requirement of § 3420, New York requires strict compliance with the notice provisions in the policy.  *Pactrans Air & Seas, Inc. v. New York Marine & General Ins. Co.,* 387 F.App'x. 43 (2d Cir. 2010).

Accordingly, a conflict exists between New York law (requiring no showing of prejudice) and Texas law (requiring a showing of prejudice).  On the summary judgment record, Water Quality has demonstrated no prejudice.

## Ambiguity

The Court notes an ambiguity in the choice of law provision when applicable law is applied to the contract.  Any such ambiguity would be resolved against the maritime insurer. *Am. S.S. Owners v. Dann Ocean Towing,* 756 F.3d 314, 319 (4th Cir. 2014).  The ambiguity arises from an odd circumstance.  The language of the policy itself contains a choice of New York law.  However, a policy of insurance, by necessity, incorporates applicable state law insurance requirements into the terms of the policy.  When Water Quality issued the policy to a Texas resident, the policy effectively incorporated applicable Texas law. *Westchester Fire Ins. Co. v. Tucker,* 512 S.W.2d 679 (Tex. 1974).  "[P]olicy provisions … are invalid if they are inconsistent with express statutory requirements or purposes." *Mid-Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 271-72 (Tex. 1999).   There is no question that Texas may regulate insurance issued for the benefit of her citizens. *Hoopestan Canning Co. v. Cullen,* 318 U.S. 313 (1943).  Thus, there is ambiguity as to whether to apply statutorily mandated Texas law or contract-mandated New York law.  Because conflicts within insurance policies are resolved in favor of the insured, maritime law mandates the Court to apply Texas law because Texas law is more favorable to the insured. *Am. S.S. Owners*, 756 F.3d at 319).   When a Texas resident is an insured, § 21.42 of the Texas Insurance Code effectively trumps other applicable choices of law. *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.,* 888 F. Supp. 1372 (S.D. Tex. 1995).

Nevertheless, for the purposes of completeness, the Court will analyze and resolve the conflict under the Restatement.  The resolution of the conflict also applies Texas law.

### Resolving the Conflict

Resolution of this matter is governed by § 187 of the Restatement.  When the parties have chosen the laws of one state in their contract, the Restatement provides:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Paragraph (1) does not apply to this dispute.  The issue resolved under paragraph (1) of § 187 defines the parties' abilities to incorporate an agreement that applies a contractual provision by reference to the law of the designated state.  It is not a provision that resolves conflicts between states.  As set forth in Comment "C" of the Restatement:

> The rule of this Subsection is a rule providing for incorporation by reference and is not a rule of choice of law. The parties, generally speaking, have power to determine the terms of their contractual engagements. They may spell out these terms in the contract. In the alternative, they may incorporate into the contract by reference extrinsic material which may, among other things, be the provisions of some foreign law. In such instances, the forum will apply the applicable provisions of the law of the designated state in order to effectuate the intentions of the parties.

Paragraph (2) of § 187 is the applicable paragraph.   Subsection (a) is inapplicable. Although ATP argues that New York has no interest in the outcome of the dispute, the Court disagrees.  Water Quality is a New York Corporation.  It is a party to the contract.  It executed the contract in New York.  New York has an interest in the outcome of the dispute.

Nevertheless, subsection (b) of paragraph (2) of § 187 provides that the Court must determine whether "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."   *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.,* 585 F.3d 236, 242 (5th Cir. 2009).

Section 188(1) provides that "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." Section 6, in turn, requires the Court to apply the following principles:

   (a)  the needs of the interstate and international systems,

   (b)  the relevant policies of the forum,

   (c)  the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

   (d)  the protection of justified expectations,

   (e)  the basic policies underlying the particular field of law,

   (f)  certainty, predictability and uniformity of result, and

   (g)  ease in the determination and application of the law to be applied.

With respect to the issue of the needs of the interstate and international systems, the issue favors Texas law.  The applicability of notice provisions does not appear to be integral to New

York's insurance regulations.  For most types of insurance policies, New York requires a showing of prejudice from late notices.  For maritime policies, it does not.  The Court has been unable to locate—and the parties do not suggest—that New York insurance systems would be impaired by the application of a "prejudice" standard to maritime policies.  Indeed, it appears that New York law would allow a policy of maritime insurance to include a "with prejudice" provision.  New York merely provides that a maritime insurance policy will be enforced as written on notice issues.   Conversely, article 21.42 of the Texas Insurance Code is a broad based protection for Texas insurance consumers.  If Texas is unable to regulate insurance sold to Texans by being forced to recognize choice of law provisions in contracts sold to Texans, it would greatly impair the Texas system of laws.

With respect to the relevant policies of the state of the forum, the Court finds that this factor concerns Courts sitting in diversity and is inapplicable to a bankruptcy Court sitting in an admiralty case.

With respect to the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, there are no other interested states other than New York and Texas.  The first factor, analyzed above, controls.

With respect to the protection of justified expectations, the factor is neutral.  There is no summary judgment evidence that the parties had any particular expectations concerning the notice provisions and the application of a prejudice rule.

With respect to the basic policies underlying the field of law, Texas law is heavily favored.  Insurance regulation has largely been a product of state law.  *Wilburn Boat Co.,* 348 U.S. at 317.  This is also true for maritime insurance.  *Id.* At 320-21.  Texas and New York both generally recognize the merits of requiring prejudice to be shown when notice is late.  Although

New York makes a distinction in the field of maritime insurance, that distinction pales in favor of the overall concerns expressed both in Texas insurance regulatory needs, and the broader implications of requiring a showing of prejudice.  Moreover, when a state has enacted a law to protect its citizens who were the intended beneficiaries of insurance policies, that law (depending on the totality of the facts) may be recognized as creating a compelling interest in favor of the state's regulatory insurance scheme.  *Aqua-Marine Constructors, Inc. v. Banks,* 110 F.3d 663, 674 (9th Cir. 1997).  In *Aqua-Marine,* the maritime policy contained a Washington choice of law provision.  The policy had been issued to an Oregon resident.  The issue was whether the insurer was required to post a litigation bond under Oregon law following the arrest of a ship.  Under Washington law, the bond would not have been required.  The Court, applying the Restatement under federal maritime law, applied Oregon law.  The Court's reasoning is instructive here:

> Of those three states, Oregon has a considerably greater interest in the application of its insurance code than do either California or Washington: Oregon has a strong interest in the protection of its citizens, including Aqua-Marine, against the insolvency of a foreign insurer.

*Id.*

Although the Court is unable to locate a Fifth Circuit maritime insurance case directly resolving the conflict between a choice of law provision and contrary state regulations, the Fifth Circuit has squarely addressed the resolution of Texas law in maritime insurance disputes when Texas law mandates (as in this case) a showing of harm from an insured's breach.  In *Albany Ins. Co. v. Anh Thi Kieu,* 927 F.2d 882 (5th Cir. 1991), the issue was whether an unintentional misrepresentation in the acquisition of an insurance policy would preclude the insured from claiming under the policy.  In explaining why the Court applied Texas law, the rationale is wholly analogous to the situation presented to this Court:

*State insurance law generally should not govern marine insurance disputes if the state does not have a substantial and legitimate interest in the application of its law.* Federal maritime law properly controls any maritime dispute in the absence of a substantial and legitimate state interest. Stated conversely, state law should not be applied unless the local state interest materially exceeds the comparative maritime concerns in the controversy. *See Grant Smith–Porter Ship Co. v. Rohde,* 257 U.S. 469, 477, 42 S.Ct. 157, 158, 66 L.Ed. 321 (1922); *Walter v. Marine Office of America,* 537 F.2d 89, 94–95 (5th Cir.1976). It is evident in the instant case that the local state interest is substantial and legitimate. Regulation of insurance relationships, including marine insurance relationships, has historically been a matter of state concern. *See Wilburn Boat Co.*, 348 U.S. at 316, 75 S.Ct. at 371. From their experience, states are far better equipped to balance the risks that each party to an insurance contract endures. **The State of Texas has concluded that the burden of unintentional misrepresentations should fall on the insurance underwriter. Texas has a material interest in ensuring that marine insurance underwriters do not invalidate the insurance protection of Texas citizens on the basis of misrepresentations that were neither willfully or intentionally asserted.** [*Italics in original; **bold added***].

*Id.* at 887-88.

The Fifth Circuit continued its analysis, when choosing whether to apply Louisiana or Texas law. Although Louisiana had a substantial interest in the application of its law, the Court selected Texas law because of its affirmative policies embodied in its insurance regulations:

A review of the first two choice of law rules reveals that both Texas and Louisiana have sufficient contact with the marine insurance policy and the parties to support the application of their insurance laws. **Of these two states, Texas has a considerably greater interest in the application of its insurance code. Texas has a strong interest in the protection of its citizens, including Anh Thi Kieu, against the overbearing tactics of insurance underwriters.** Louisiana's interest in the protection of citizens of foreign states is less significant. The insurance laws of Texas should have been applied, and appropriately, the district court so applied them. Albany's argument that Louisiana insurance law governs its dispute with Anh Thi Kieu lacks merit.  [**bold added**].

*Id.* at 891.

With respect to certainty, predictability, and uniformity of result, the Court finds this factor to be neutral.  There is no summary judgment evidence to lead to a different conclusion.

With respect to the ease of determination of the law to be applied, this factor favors the application of New York law.  The contract specifies New York law, and the application of the laws of another state (applied through federal maritime law) requires an analysis of factual determinations such as the residence of the insured.  Although this factual burden is not heavy, there are no factual issues if the contract's forum selection clause is followed.

Applying the Restatement, the Court is mandated to apply Texas law.  Texas has a substantially greater interest in the outcome of this dispute than New York.  The only factor favoring the application of New York law concerns the ease of determination of applicable law.  That factor cannot outweigh the strong interests of the State of Texas.

### Excluded Acts

As set forth in the Background section above, the lawsuit primarily concerns allegations of willful misconduct by ATP that are likely excluded from coverage under the insurance policy.  However, in determining a duty to defend, "[e]ven if a plaintiff's complaint alleges multiple claims or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage."  *Matagorda Ventures v. Travelers Lloyds Ins. Co.,* 203 F. Supp. 2d 704 (S.D. Tex. 2000).  Under Texas law, "[o]nce coverage has been found for any portion of a suit, an insurer must defend the entire suit. *St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied).

The policy covers negligent acts.  The lawsuit alleges some negligent acts.  Accordingly, under the familiar eight-corners rule, Water Quality must defend the lawsuit.  N*at'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merch. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

**Conclusion**

Whether determined under a plain reading of § 21.42 of the Texas Insurance Code, or under a more thorough analysis under federal maritime law applying the Restatement of Conflicts, Texas law applies to this dispute.   Accordingly, Water Quality Insurance Syndicate must reimburse ATP for ATP's defense costs and expenses incurred in defending *United States v. ATP Oil & Gas Corp., et al.,* C.A. 2:13-cv-00262-NJB-KWR pending in the United States District Court for the Eastern District of Louisiana.

SIGNED **June 5, 2015.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE