## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 12-36187 |
| ATP OIL & GAS CORPORATION, | |
| DEBTOR | CHAPTER 11 |

| | |
|---|---|
| RODNEY TOW, TRUSTEE, | ADVERSARY NO. 14-03280 |
| PLAINTIFF, | |
| V. | |
| WATER QUALITY INSURANCE SYNDICATE, | |
| DEFENDANT. | |

### WATER QUALITY INSURANCE SYNDICATE'S
### MOTION FOR RECONSIDERATION
[relates to Dkt. Nos. 18 and 25]

*This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.*

There will be a hearing on this motion on July 22, 2015 at 9:00 a.m. in Courtroom 404, 515 Rusk, Houston, TX 77002.

**TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:**

NOW INTO COURT, through undersigned counsel, comes Water Quality Insurance Syndicate ("WQIS"), defendant in the captioned adversary proceeding, and pursuant to FRCP 59 and Bankruptcy Rule 9023, moves the court to reconsider its Order (Doc. 25) requiring WQIS to reimburse attorneys' fees incurred by the Trustee, for the reasons set forth below.

The Trustee filed his Motion for Partial Summary Judgment Regarding Duty to Defend (Doc. 18) seeking an order that WQIS has a duty to defend the Trustee in the pollution enforcement litigation filed by the United States in the Eastern District of Louisiana (the "Underlying Litigation").

After extensive briefing, the Court entered an Order (Doc. 25) and Reasons (Doc. 26) granting relief different from that sought by Trustee in its motion, but instead ordering that WQIS reimburse the Trustee for fees incurred in the defense of the United States' enforcement proceeding.

WQIS respectfully disagrees with the Court's conclusion that Texas law controls over the parties' mutual choice of New York law to govern the interpretation of their maritime insurance contract, and reserves all its rights to seek review of that decision.

This motion, however, is directed at three issues briefed by WQIS but not addressed in the Court's June 5 opinion. After an extended discussion of the choice of law issue, the Court held that Texas law applies to the Policy, held that the government's allegation of "negligence" negated any "intentional act" defense to the motion, and proceeded immediately to its Conclusion.

But resolution of the choice of law issue does not eliminate all the Policy defenses asserted by WQIS in its opposition to the Trustee's summary judgment motion. The insurance contract, whatever state's law may be applied to it, remains a contract, and WQIS can have no obligations outside those imposed by that contract.

I.  **NO OCCURRENCE IS ALLEGED IN THE UNDERLYING LITIGATION**.

First, the Policy only provides coverage, and the duty to reimburse attorneys' fees only arises, in the event of an Occurrence, as defined in the Policy.

The express terms of the Policy state that WQIS agrees to "indemnify… and reimburse [ATP] for an **Occurrence,**" which includes "[d]ischarges, [r]eleases or the [s]ubstantial [t]hreat of [d]ischarges or [r]eleases," subject to the Policy's terms, conditions and exclusions.[1] The Policy also excludes certain events otherwise qualifying as "Occurrences" under the Policy based upon the Assured's operation of vessel.[2]

Trustee cannot satisfy ATP's burden of proof which requires evidence of a fortuitous event which qualifies as an "Occurrence" as that term is defined in the Policy for any duty to reimburse costs to arise.

The Policy defines "Occurrence" in Part V – Definitions:

> **Occurrence** means any one **accident** or **series of accidents** arising out of one event which gives rise or may give rise to loss, damage, cost, liability or expense claimed under this Policy including an insured violation of the vessel general permit, where the Occurrence commences on or after the Inception Date and Time and on or before the expiration Date and Time shown on the Declarations Page.[3]

---

[1] *Id.* at Part I, Insuring Provisions p. 3 of 19 (emphasis theirs).
[2] See WQIS's Memorandum in Opposition to Motion for Partial Summary Judgment (Doc. 20) at pages 23-27.
[3] *Id.* at Part V – Definitions, Dkt. No. 18-1, p. 9 of 19.

As seen, the term "Occurrence" means only those events which qualify as an "accident." While the term "Occurrence" is defined as "any one accident or series of accidents" in the Policy, there is no definition provided in the Policy for the term "accident." Black's Law Dictionary defines "accident" as

> An unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated; any unwanted or harmful event occurring suddenly, as a collision, spill, fall, or the like, irrespective of cause or blame…[4]

An "Occurrence" under the Policy is therefore limited to those events which qualify as being fortuitous, unintended, unforeseen, not reasonably anticipated, unwanted, unplanned, or unexpected.

Under the facts and circumstances of this case, Trustee has not, and cannot, meet his burden of proving that the damage was the result of a fortuitous occurrence to trigger coverage under the Policy. For *five years*, ATP allegedly injected an unpermitted chemical, Cleartron-ZB103, into the wastewater outfall pipe resulting in unlawful discharge into the Gulf of Mexico. ATP cannot argue in good faith that it was not aware of its own NPDES permit, but instead mistakenly purchased significant amounts of an unpermitted chemical for the alleged purpose of "mask[ing] oil sheen on the ocean surface resulting from [its] discharge of wastewater containing quantities of oil in excess of its NPDES permit limit."[5] Therefore, ATP either knew or should have known that the injection of the Cleartron-ZB-103 downstream of the NPDES sampling point would expose ATP to civil

---

[4] ACCIDENT, Black's Law Dictionary (10th ed. 2014).
[5] See, Exhibit A at paragraph 20, Complaint of United States of America in the Underlying Lawsuit.

penalties if discovered by regulators. That is not a fortuitous accident.

These operations were within the control of ATP and occurred from April 2007 through March 14, 2012. The mechanical complexity in addition to the extended temporal element establishes that this was no fortuitous event. The Underlying Litigation does not allege facts which would be an Occurrence under the Policy. In the absence of such factual allegations, there is no duty to reimburse costs.

The Court's finding that the Complaint in the Underlying Litigation alleges negligence is not dispositive of this issue. The necessity for the Insured to demonstrate an Occurrence under the Policy is a separate requirement for coverage and reimbursement. Referring to the Underlying Litigation and the Policy, under the Eight Corners Rule, leads to the conclusion that no Occurrence as defined in the Policy is alleged by the United States in its suit. What is alleged is a five year long course of conduct, which was certainly not an unplanned or unforeseen event or an accident.[6]

Even applying Texas law, the leading Texas Supreme Court case on the distinction between an act which is an occurrence and one which is not remains *Lamar Homes, Inc. v. Mid-Continent Casualty Company*, 242 S.W. 3d 1 (2007). The court there held that a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result. That is not the case here, as the intended result….concealing excessive oil discharge….of the deliberate act of installing the concealed system to inject dispersant into wastewater was achieved.

> Thus, a claim does not involve an accident or occurrence when either direct allegations purport that the injury (which is presumed in cases of intentional tort) or circumstances confirm that the

---

[6] The Policy covers some statutory fines provided that they result from an Occurrence and are otherwise within the terms and conditions of the Policy.

resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not. *Lindsey*, 997 S.W. 2d at 155. (242 S.W. 3d 3d at 7.)

## II. <u>WQIS HAS THE RIGHT TO APPROVE COUNSEL</u>.

Second, the Court apparently recognized that the marine indemnity policy at issue does not impose a duty to defend on WQIS, as argued by the Trustee, and instead in its order called for WQIS to reimburse the Trustee for costs incurred. But any duty to reimburse legal costs incurred by WQIS's insured is contingent, among other things, on the insureds' compliance with the policy's requirement that WQIS must approve the counsel selected. WQIS has a list of approved attorneys who handle pollution defense cases for its insureds. It has an important business interest in avoiding adverse precedents which will affect it and its insureds' interests in the future, and a legitimate concern that its insureds not retain counsel without its prior approval.

Part I, Section D(5) of the Policy provides:

> In addition, costs and expenses incurred by the **Assured** with the consent of WQIS for Investigation of, or defense against, any liabilities which are covered under this SECTION C of PART I.

Section B of the Policy provides:

> Except as provided for in SECTIONS F and H of PART I, this Policy does not provide indemnity for any cost or expense incurred by the Assured without the prior consent of WQIS.[7]

Thus, even if Texas law applied, WQIS would still have no obligation to reimburse defense costs paid to attorneys it did not approve, and in fact specifically refused to approve. The obligation to

---

[7] Section F and H are exceptions for emergencies where prior consent is not feasible.

reimburse is dependent on the insured's compliance with its duties under the policy.

WQIS received a request by ATP for consent to retain Cooper & Scully as defense counsel to represent its interests in the Underlying Litigation on July 12, 2014.[8] WQIS, through its counsel, refused consent. Among other reasons, it was noted that consent to any such request was impossible as a result of threatened litigation against WQIS on ATP's behalf by Cooper & Scully.[9] WQIS certainly has the right under its policy to refuse to consent to proposed defense counsel who threaten to sue WQIS if consent is refused.

Thus, even if Texas law applied, WQIS would still have no obligation to reimburse defense costs paid to attorneys it did not approve, and in fact specifically refused to approve. The obligation to reimburse is dependent on the insured's compliance with its duties under the policy.

### III. WQIS SUFFICIENTLY RAISED THE ISSUE OF PREJUDICE.

New York law, which WQIS believes governs this Policy, would require a denial of coverage and reimbursement due to the egregiously late notice provided by ATP to WQIS, in violation of ATP's duties and warranties under the Policy. Under New York law, no showing of prejudice is required from late notice under a policy of maritime insurance….prejudice is assumed as a matter of law.

Under Texas law, which the Court has held applies here, there is no such presumption. But the insurer may demonstrate prejudice from late notice as a defense to coverage and to a duty to reimburse legal fees, and WQIS did so in its briefs. WQIS briefed the obvious elements of

---

[8] Exhibit C to WQIS's Opposition Memorandum (Doc. 20).
[9] Exhibit D to WQIS's Opposition Memorandum (Doc. 20).

prejudice resulting from ATP's eighteen month delay in giving notice of the claim. The elements of that prejudice are patent in the stipulated facts, and were spelled out in WQIS's summary judgment papers:

> Specifically, WQIS was denied the opportunity to investigate the facts and circumstances leading to the purported discharge, thereby preventing WQIS from responding to the claims asserted by the United States in the event that coverage did in fact exist under the Policy. In consideration of the claims of potential "gross negligence or willful misconduct" asserted by the United States in the Underlying Litigation, the eighteen month delay in providing notice circumvented and compromised WQIS's ability to determine if coverage was excluded under the Policy.[10]

ATP's failure to give timely notice was also a breach of its warranties under the Policy:

> (2) It is warranted that the **Assured** shall cooperate with WQIS and the **Assured** shall immediately forward to WQIS all information, communications, surveys, reports, processes, pleadings or legal papers relating to any **Occurrence** and shall make available and secure all vessels, premises and facilities for inspection by WQIS.[11]

The Trustee offered no countervailing arguments, much less factual support, for his claim that WQIS suffered no prejudice from losing all opportunity to investigate the claim in a sufficiently timely manner, before the removal of all the physical elements at issue from the vessel, the dispersal of its crew, and from the lack of opportunity to have approved counsel involved early in the investigation and defense. The Court in its opinion cites a lack of "summary judgment evidence" on the issue, but the admitted and stipulated facts make the prejudice to WQIS obvious, and at least make this a disputed factual issue precluding summary judgment. WQIS is not in a

---

[10] WQIS Memorandum in Opposition to Motion for Summary Judgment (Doc. 20) at page 8.
[11] Policy at Section C(2).

position to provide specific affidavit testimony on what opportunities were lost through its insured's delay, because it does not and cannot know what it might have been able to do, given timely notice.

For the foregoing reasons, Water Quality Insurance Syndicate prays that this motion for rehearing be granted and the Court's previous ruling be vacated and set aside, and that the Trustee's Motion for Partial Summary Judgment be denied.

>Respectfully submitted,
>
>MONTGOMERY BARNETT, L.L.P.
>
>*/s/ Stephen L. Williamson*
>
>─────────────────────────────
>STEPHEN L. WILLIAMSON (La. Bar No. 8316)
>A. GORDON GRANT, JR. (La. Bar No. 6221)
>PHILIP S. BROOKS, JR. (La. Bar No. 21501)
>JEREMY D. RUSH (La. Bar No. 30705)
>1100 Poydras Street, Suite 3300
>New Orleans, LA 70163
>Telephone:   (504) 585-3200
>Facsimile:   (504) 585-7688
>E-mail:      swilliamson@monbar.com
>             ggrant@monbar.com
>             pbrooks@monbar.com
>             jrush@monbar.com
>
>*Attorneys for Water Quality Insurance Syndicate*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2015, notice of this document will be electronically mailed to the parties registered or otherwise entitled to receive electronic notices in this adversary proceeding pursuant to the Electronic Filing Procedures in this District.

*/s/ Stephen L. Williamson*

_____
STEPHEN L. WILLIAMSON (La. Bar No. 8316)
A. GORDON GRANT, JR. (La. Bar No. 6221)
PHILIP S. BROOKS, JR. (La. Bar No. 21501)
JEREMY D. RUSH (La. Bar No. 30705)
Montgomery Barnett, L.L.P.
1100 Poydras Street, Suite 3300
New Orleans, LA 70163
Telephone:     (504) 585-3200
Facsimile:     (504) 585-7688
E-mail:            swilliamson@monbar.com
                      ggrant@monbar.com
                      pbrooks@monbar.com
                      jrush@monbar.com

*Attorneys for Water Quality Insurance Syndicate*