

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| ATP OIL & GAS CORPORATION § | CASE NO: 12-36187 | |
| Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| RODNEY TOW § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 14-03280 | |
| § | | |
| WATER QUALITY INSURANCE § | | |
| SYNDICATE, *et al* § | | |
| Defendant(s) § | | |

### MEMORANDUM OPINION REGARDING VACATUR

Water Quality Insurance Syndicate seeks to vacate this Court's Judgment and its accompanying Memorandum Opinion. (Case No. 14-03280; ECF Nos. 25 and 26). The Judgment ordered Water Quality to reimburse ATP for its defense costs incurred in a lawsuit filed against ATP by the United States. The Memorandum Opinion gave the reasons for the Summary Judgment. Neither the Judgment nor the Memorandum Option will be vacated.

### Background

Pursuant to a one-year insurance policy issued on November 17, 2011, Water Quality insured ATP against certain pollution-related losses. On February 11, 2013, the United States sued ATP for discharging pollutants from an offshore platform located in the Gulf of Mexico. The lawsuit sought damages from ATP. The damages include alleged violations that occurred within the policy period. The insurance policy required ATP to give "immediate notice" of any occurrence that gave rise to a claim under the policy. ATP failed to give notice as required by the policy.

The United States notified ATP of its alleged violations on March 14, 2012. It filed suit on the alleged violations on February 11, 2013. ATP defended the lawsuit and sought reimbursement from Water Quality. Water Quality refused reimbursement and denied coverage of the claim. The defense was based on ATP's late notice of the claim. ATP sued for reimbursement and coverage.

On summary judgment, the Court issued a 15 page Memorandum Opinion rejecting the "late notice" defense. (ECF No. 25). The Court separately issued a judgment requiring that Water Quality reimburse defense costs to ATP. (ECF No. 26). The summary judgment was initially interlocutory because it did not determine all issues in the lawsuit. Water Quality requested that the Court sever the summary judgment order so that it would be final for appeal. The Court granted that request, the summary judgment order became final, and a notice of appeal was timely filed.

While on appeal, the lawsuit was settled. As a condition of the settlement, the parties agreed to request that this Court vacate its Judgment and Memorandum Opinion. The settlement was not conditioned on this Court's vacatur of its Memorandum Opinion. The appeal was dismissed on November 17, 2015, with no substantive opinion having issued from the District Court on appeal.

At the hearing before this Court on whether to approve the settlement, the Court informed Water Quality that the Court normally followed a practice of refusing to vacate its opinions based on subsequent settlements. Water Quality advised the Court that it wished to persuade the Court that the opinion in this case should be vacated, and has now filed its motion. The Court notes that the motion was accompanied by a carefully reasoned brief.

The settlement was approved, and is not conditioned on the outcome of the present motion.

## Federal Rule of Bankruptcy Procedure 7058

Federal Rule of Civil Procedure 58 is made applicable in bankruptcy adversary proceedings through Federal Rule of Bankruptcy Procedure 7058. Rule 58 provides for the separation of judgments from opinions. "Every judgment and amended judgment must be set out in a separate document . . . ." Fed. R. Civ. P. 58(a).

A judgment is a matter from which an appeal may be taken. Fed. R. Civ. P. 54(a), as made applicable by Fed. R. Bankr. P. 7054.

An appeal may not be taken from a memorandum opinion. Judgments, not opinions, are appealable. *California v. Rooney*, 483 U.S. 307, 311 (1987); *United States v. Fletcher*, 805 F.3d 596, 602 (5th Cir. 2015).

As set forth in more detail below, this distinction between judgments and opinions becomes relevant to an analysis under Fed. R. Civ. P. 60(b).

## Standards for Vacatur

Although not directly controlling, the Supreme Court's decision *in U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship* must be the starting place for the Court's analysis. 513 U.S. 18 (1994). In *Bonner Mall,* the Court was confronted with the question of whether the Supreme Court should ordinarily vacate a lower Court's decision if the dispute was settled on appeal. The Court unanimously rejected the concept that vacatur of an opinion should be the routine outcome of a settlement pending appeal. The Court further instructed that vacatur should not be the ordinary outcome for appeals to the lower Courts as well. The Court determined that vacatur should occur only in exceptional circumstances. *Id.*

The Court's opinion was based on a recognition that the Constitution restricts federal jurisdiction to live cases and controversies.  When a case is settled, there is no longer a live case or controversy.  To dispose of the (now moot) case, the Court must determine whether lower Court opinions should be vacated or should stand.  The Court reasoned that opinions should not ordinarily be vacated:

- The principal should be based on determining an outcome "most consonant to justice in view of the nature and conditions which have cause the case to become moot." *Id.* at 24  (internal quotations and citations omitted).

- Where mootness results from the voluntary act of a settling party, the settling party has ordinarily surrendered his claim to the equitable remedy of vacatur.  *Id.* at 25.

- The fact that both parties were needed for the settlement is not relevant to whether the "extraordinary remedy of vacatur" should be granted.  *Id.* at 26.

- Vacatur must account for the public interest.  Opinions are not the property of the parties, but of the legal community and public as a whole.  *Id.* at 26.

- Allowing parties to privately negotiate vacatur would "disturb the orderly operation of the federal judicial system.  *Id.* at 27.

However, the Court was not addressing whether a lower court should vacate its *own* orders.  Whether a court should vacate its own orders was left to the application of Rule 60(b) of the Federal Rules of Civil Procedure.  *Id.* at 29.  Rule 60(b), of course, is made applicable in this proceeding by Fed. R. Bankr. P. 9024.

The Fifth Circuit Court of Appeals has not yet addressed whether *Bonner Mall* should be applied under Rule 60(b).  However, several other Circuits—with mixed results—have considered the question.

Water Quality relies on *American Games, Inc. v. Trade Products, Inc.*, 142 F.3d 1164 (9th Cir. 1998).  In that case, the Ninth Circuit explicitly rejected the "exceptional circumstances" test established under *Bonner Mall* for application in a Rule 60(b) motion.  In the

9th Circuit, a trial court should utilize a traditional "balance of the equities" test, rather than an "exceptional circumstances" test in determining whether to vacate a judgment that has been settled. Nevertheless, the Supreme Court has held that relief only under Rule 60(b)(6)—as opposed to Rule 60(b) generally—must only be granted in "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005).

The Seventh Circuit has largely adopted *American Games*. *Marseilles Hydro Power LLC v. Marseilles Land & Water Co.,* 481 F.3d 1002, 1003 (7th Cir. 2007) ("[W]e agree with the court in *American Games* . . . that on remand the district court would not be cabined by the 'exceptional circumstances' test."). However, it appears that *Marseilles* does not apply to a Rule 60(b)(6) motion, to which the more stringent *Bonner Mall* test would nevertheless apply. *See Obrycka v. City of Chicago*, 913 F. Supp. 2d 598, 601 (N.D. Ill. 2012).

In a carefully considered opinion, the Fourth Circuit held that Rule 60(b) would continue to be applied to vacatur at the trial level. Importantly, the Court concluded that under Rule 60(b)(6), the exceptional circumstance test under *Bonner Mall* was substantially identical to the Rule 60(b)(6) test:

> The Supreme Court has not addressed, post-*Bancorp,* whether the standards governing district court vacatur for mootness are identical to the standards governing appellate court vacatur for mootness. But we are convinced that Bancorp 's considerations of relative fault and public interest must also be largely determinative of a district court's decision whether to vacate its own judgment due to mootness under Rule 60(b), and specifically Rule 60(b)(6).

*Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 (4th Cir. 2000).

It appears that the Federal Circuit Court has largely adopted *Valero,* although in an unpublished opinion. *Morton v. Gober*, 243 F.3d 557 (Fed. Cir. 2000).

Apart from Circuit Court opinions, this Court is heavily persuaded by Judge Rosenthal's carefully reasoned opinion in *Philip Services Corp. v. City of Seattle*, 2007 WL 3396436 (S.D.

Tex. Nov. 14, 2007).  An opinion by a United States District Judge for the Southern District of Texas, though not technically binding, deserves great deference from the bankruptcy judges of this District.  *In re Villarreal*, 413 B.R. 633, 640 (Bankr. S.D. Tex. 2009).

*Philip Services* contains an extensive analysis of whether the *Bonner Mall* "exceptional circumstances" test should be applied by a trial court deciding a Rule 60(b)(6) motion.  Because the opinion is so closely on point, and so well-reasoned, the Court publishes this lengthy (but edited) excerpt from the opinion:

> The parties, Philip Services Corp. and the City of Seattle, have settled this case on appeal. The parties jointly move to vacate this court's March 2, 2007 Memorandum and Opinion and Order as part of that settlement. The parties urge that vacatur is appropriate under Federal Rule of Civil Procedure 60(b) because "exceptional circumstances" are present.
> …
>
> The practice of courts vacating their decisions as part of the parties' settlement has long been controversial. The arguments have centered on whether the practice helps or hinders settlements and whether the public interest and rights of third parties are affected . In *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 19, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), the Supreme Court addressed "whether appellate courts in the federal system should vacate civil judgments of subordinate courts in cases that are settled after appeal is filed or certiorari sought."  The Court's answer, in a unanimous opinion, was a clear "no."  The Court discussed the "equitable entitlement to the extraordinary remedy of vacatur" and acknowledged that a party's "voluntary forfeiture of review constitutes a failure of equity." *Id.* at 26.  The Court also recognized the public interest in judicial precedents, which are "presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Id*. The Court stated that vacatur of a judgment because of settlement is not favored and requires "exceptional circumstances." *Id*. at 29.  The Court held that voluntary settlements and agreements among litigating parties that provide for vacatur of a lower court opinion are not sufficient, standing alone, for a court to vacate a lower court opinion. *Id.* The parties seeking relief from the status quo of the judgment must demonstrate equitable entitlement to the extraordinary remedy of vacatur. *Id*.
>
> The *Bonner Mall* opinion expressly stated that it dealt only with appellate vacatur of lower court decisions. 513 U.S. at 19, 28-29. "It speaks not at all to the power of a district court to vacate or otherwise modify its own opinion." *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 117 (4th Cir.2000).  The district and appellate power of vacatur are derived from different sources; while the appellate power of vacatur is granted by 28 U.S.C. § 2106, the district court power is derived from Federal Rule of Civil Procedure 60(b).

> Despite this difference, most courts considering the question have held that a district court should apply the *Bonner Mall* "exceptional circumstances" standard in deciding whether to vacate its own judgment when a case becomes moot as a result of settlement.
>
> …
>
> Courts have identified several reasons why the *Bonner Mall* standard should apply to a district court's decision to vacate its own order. First, the nature of the relief sought is the same, and the general presumption against vacatur announced in *Bonner Mall* arises from the extraordinary nature of the relief, not the nature of the deciding forum. Second, *Bonner Mall* identified the considerations relevant to the district court's decision to vacate its own order. Third, nothing in the language of the respective vacatur authorities suggests that different equitable standards do or should govern the exercise of the respective vacatur powers. Fourth, there are close parallels between the considerations that *Bonner Mall* identified as relevant to deciding whether to vacate a lower court order and the considerations that the Court has identified as generally relevant under Rule 60(b)(6). Finally, district courts have long applied the same standards as appellate courts in deciding whether to vacate their own judgments. *Valero*, 211 F.3d at 118-20.

*Philip Services Corp. v. City of Seattle,* 2007 WL 3396436, at *1-3 (S.D. Tex. Nov. 14, 2007).

### Rules 60(b)(5) and 60(b)(6)

Water Quality requests relief generally under Rule 60(b), but at one point specifically references Rule 60(b)(5). Rules 60(b)(1)-(4) are plainly inapplicable. Accordingly, the Court will consider relief under rules 60(b)(5) and 60(b)(6).

Among other things not relevant here, Rule 60(b)(5)'s first clause provides for relief from a judgment that "has been satisfied, released or discharged." This is a rarely used portion of the Rule.

> The vast majority of motions . . . invoke Rule 60(b)(5)'s third clause. In contrast, the first clause of Rule 60(b)(5) is raised far less often—typically when there is a dispute over the amount of the judgment—and is almost never applied to consent decrees. As such, we find very little applicable precedent interpreting this clause.

*Frew v. Janek*, 780 F.3d 320, 327 (5th Cir. 2015). In the present case, there is no dispute as to whether the judgment has been satisfied, released, or discharged. The judgment was satisfied by

settlement. Although Water Quality seeks relief both from the Judgment and the Memorandum Opinion, Water Quality offers no reasons at all to vacate the judgment. Vacatur of the Judgment would leave the Memorandum Opinion in place, and the sole purpose of Water Quality's motion is to minimize the effects of the Memorandum Opinion on future litigation. The burden for obtaining relief lies on Water Quality. "As the party seeking relief, Defendants must bear the burden of showing that Rule 60(b)(5) applies." *Frew v. Janek*, 780 F.3d at 327. With no reasons offered to vacate the judgment, the Court finds no equitable reason to grant the relief. The Judgment will not be vacated.

With respect to the Memorandum Opinion, Rule 60(b)(5) is inapplicable. By its own terms, it applies only to the satisfaction of a "judgment." The Memorandum Opinion is not a "judgment." As set forth above, judgments can be appealed, opinions cannot be appealed. That is because judgments grant relief, and opinions give reasons. When a judgment has been satisfied under Rule 60(b)(5), the satisfaction may make prospective enforcement of the judgment's decree problematic and inequitable. However, a judgment debtor does not satisfy an opinion; a judgment debtor satisfies the obligation imposed by a judgment. Rule 60(b)(5) is inapplicable to opinions.

Although Rule 60(b)(5) applies only to "judgments," Rule 60(b)(6) also applies to a "proceeding." Fed. R. Civ. P. 60(b) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding."). A "proceeding" includes "all acts and events between the time of commencement and the entry of judgment." *Proceeding*, *Black's Law Dictionary* (10th ed. 2014). It includes "[a]n act or step that is part of a larger action." *Proceeding*, *Black's Law Dictionary* (10th ed. 2014). Because the Court's

Memorandum Opinion was a "proceeding" within this adversary proceeding, it is governed by Rule 60(b)(6).

The Court recognizes that an argument could be fashioned that the satisfaction of a judgment under Rule 60(b)(5) could lead a court to conclude that a Memorandum Opinion in support of the judgment should be vacated.  However, courts have not traditionally utilized Rule 60(b)(5) to vacate anything other than judgments.  Indeed, Rule 60(b)(5) is "very rarely" used.  11 Fed. Prac. & Proc. Civ. § 2863 (3d ed.).  Accordingly, the "equitable balancing" that is traditionally used in Rule 60(b)(5) is used to determine whether an injunction should remain in effect following changed circumstances, or whether a monetary judgment should be vacated because the parties dispute its satisfaction.  *See, e.g.*, *Sierra Club v. Mason*, 365 F. Supp. 47 (D. Conn. 1973) ("It is no longer equitable that the judgment should have prospective application."); *John W. Johnson, Inc. v. J. A. Jones Const. Co.*, 369 F. Supp. 484, 498 (E.D. Va. 1973) ("The Court finds that the judgment heretofore entered against the City of Richmond, Virginia, has been satisfied and the Court further finds that it is no longer equitable that the judgment should have prospective application.").

The law gives no such "equitable balancing" test when utilizing the satisfaction of a judgment for relief from a memorandum opinion.  To utilize Rule 60(b)(5) for relief beyond the judgment itself would invoke the very concerns that energized the Supreme Court's *Bonner Mall* opinion.  Accordingly, even if the Court applies Rule 60(b)(5) to determine whether to vacate a memorandum opinion, it would apply the *Bonner Mall* "exceptional circumstances" test.

If a memorandum opinion should be vacated, then the party with the burden must demonstrate an entitlement under Rule 60(b)(6).  As carefully explained in *Philip Services* and *Valero Terrestrial,* the inquiry under Rule 60(b)(6) is fully framed by *Bonner Mall.*

*Bonner Mall*, in turn, requires the Court to examine whether the party seeking vacatur caused mootness (i.e., the settlement in this case) and whether the public interest favors vacatur. Water Quality cannot prevail applying this standard. First, as in *Bonner Mall,* Water Quality was a party to the settlement. Without its own participation in the settlement, the matter would not have become moot by settlement. The Supreme Court squarely faced this issue and determined that the voluntary participation of a party in the settlement was the most significant factor outweighing vacatur based on mootness. With respect to the public interest, none is effectively argued by Water Quality. This Court's Memorandum Opinion concerned an issue that could be repeated (i.e., a policy issued by Water Quality to a Texas insured). The principal holding is that the notice provision in a policy issued to a Texas resident is governed by Texas law. The Court does not understand how the public interest could favor the elimination of an opinion that provides guidance on the rights and duties of the parties in such a situation. If the Court erred, the remedy should have been through appeal---a right voluntarily waived by Water Quality in the settlement.

Accordingly, Rule 60(b)(6) fails to provide relief to Water Quality.

## Conclusion

Water Quality needs no relief from the Court's judgment. The relief that Water Quality actually seeks is from the Court's reasoning contained in its Memorandum Opinion. The reasoning should not be disturbed. A separate order will issue.

SIGNED **January 4, 2016.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE